[Civ. No. 5637. First Appellate District, Division Two.—April 29, 1926.]

E. A. NICHOLS, Petitioner, v. A. E. SUNDERLAND, as Commissioner of Public Safety, etc., et al., Respondents.

[1] MUNICIPAL CORPORATIONS—FRESNO CHARTER—CIVIL SERVICE—DISMISSAL OF POLICE OFFICER—HEARING.—In view of the provisions of the charter of the city of Fresno relating to removal of officers and employees, and of the ordinances and rules of the Civil Service Board of said city with reference thereto, a notice from the appointing officer to a police officer of that city advising said police officer that he is thereby "dismissed" from the service for certain reasons that are stated is not to be construed as an absolute dismissal, but only as a temporary deprivation from office, where there is appended to such notice a note to the effect that "any person dismissed from the service may file a written answer and demand a hearing before the Civil Service Board, providing such answer or demand is filed with the Board within five (5) days after the serving of the notice of such dismissal" as provided by the rules of said Civil Service Board.

[2] ID.—NOTICE OF REMOVAL—REASONS.—Under the provisions of the charter and ordinances of the city of Fresno relating to the removal of officers and employees, it is sufficient if the written notice of removal state "the reasons" for the act of the superior officer; and where the removal of a subordinate officer is to "promote the efficiency of the service," the written notice of removal need not state acts of malfeasance or nonfeasance, but may state matters which tend to show a set of facts which may subsequently transpire as being without foundation, but until met and explained, or avoided, would tend greatly to hamper "the efficiency of the service," and to greatly embarrass the subordinate official in the discharge of his duties.

[3] ID.—AMENDMENT OF CHARGES.—The Civil Service Board of the city of Fresno has the power to permit the amendment of written charges made against a subordinate official, and such amendment relates back to the date when the original charges were filed.

[4] ID. — SUFFICIENCY OF CHARGES — HEARING BY BOARD.—Unless the charges made against a subordinate official of the city of Fresno are so defective as to be void, the sufficiency of such charges must be heard by the Civil Service Board of that city, and an attack upon their sufficiency may not be made in the courts for the first time.

[5] ID.—SUSPENSION PENDING HEARING—DELAY.—The provision of the ordinance of the city of Fresno restricting suspensions for dis-

ciplinary purposes to not more than thirty days does not apply to suspensions pending the hearing of removal proceedings; and a subordinate officer against whom removal proceedings were instituted is in no position to complain of a suspension extending over a period of more than thirty days, where the delays in hearing the charges against him were caused or requested by him and not his superior officer.

(1) 18 **C. J.**, p. 1141, n. 75; 43 **C. J.**, p. 780, n. 63.    (2) 43 **C. J.**, p. 781, n. 70, 71, 72.    (3) 43 **C. J.**, p. 781, n. 73; 31 **Cyc.**, p. 362, n. 37, p. 464, n. 14.    (4) 43 **C. J.**, p. 796, n. 48.    (5) 43 **C. J.**, p. 807, n. 54.

PROCEEDING in Mandamus to compel the payment of petitioner's salary.    Writ denied.

The facts are stated in the opinion of the court.

Lindsay & Gearhart and B. W. Gearhart for Petitioner.

Loren A. Butts, City Attorney, for Respondents.

STURTEVANT, J.—The petitioner was a police officer of the city of Fresno. On or about the seventh day of November, 1925, the petitioner, together with eleven other police officers of the city of Fresno, was indicted by the federal grand jury, charged with the crime of conspiracy to violate the National Prohibition Act. On November 9, 1925, the respondent A. E. Sunderland, Commissioner of Public Welfare and head of the police department, delivered to the petitioner a writing in words and figures as follows, to wit:

"Civil Service Board, City of Fresno, California.
                    "Dismissal.
                "Date November 9, 1925, 11:00 a. m.
"Mr. E. A. Nichols,
    "Detective Sergeant,
        "2659 White Ave.,
            "Fresno, Calif.
"For the reasons stated below, you are hereby dismissed from the position of Detective Sergeant in the Department of Police, effective immediately. Reasons for dismissal: Having been indicted by the Federal Grand Jury, charging

you with a felony, to-wit: Conspiracy to Violate the National Prohibition Enforcement Act, therefore, for the good of the service, and, in harmony with the Civil Service Rules, you are hereby dismissed as an employee of the Fresno Police Department, effective immediately.

"You will please deliver to the officer in charge at Police Headquarters, of the City of Fresno, all property of the said City now in your possession, and oblige.

"A. E. SUNDERLAND,
"Head of Department.

"Note: Any person dismissed from the service may file a written answer and demand a hearing before the Civil Service Board, providing such answer or demand is filed with the Board within five (5) days after the serving of the notice of such dismissal. See Rule XI, Ord. 972."

Since that date the petitioner has not been recognized by said respondent nor assigned to any duty whatsoever. Thereafter, on the twelfth day of November, 1925, the petitioner served on said respondent a written answer demanding a hearing and thereupon both writings were delivered to the Civil Service Commission of Fresno. The matter was set for hearing and before the day appointed for the hearing the petitioner requested in writing that the matter be continued indefinitely by the Civil Service Board. The request was granted. After petitioner's trial in the federal court was concluded about February 1, 1926, said respondent filed and served on the petitioner a writing in words and figures as follows:

"Civil Service Board, City of Fresno, California.
"Amended Notice of Dismissal.
"Date February 1, 1926.

"Mr. E. A. Nichols,
"Detective Sergeant.
"2659 White Ave.
"Fresno, Calif.

"You are hereby notified that the notice of your dismissal as a member of the Police Department of the City of Fresno, effective November 9th, 1925, a copy of which has been heretofore furnished you, is hereby amended to read as follows:

"Having been indicted by the Federal Grand Jury, charging you with a felony, to-wit: Conspiracy to violate

the National Prohibition Act, and in addition thereto, during the last two years, you as a Police Officer of the City of Fresno, have performed your duties in an incompetent and inefficient manner, and in addition thereto, you have . accepted bribes and money from persons known to you at the time to be engaged in the business of selling intoxicating liquors unlawfully, all of which was and is a violation of your oath of office as such Police Officer of the City of Fresno.

"In harmony with the Civil Service rules, and to promote efficiency of the public service, you were dismissed as a member of the Police Department and as an employee of the City of Fresno.

"A. E. SUNDERLAND,

"Head of Department.

"Note: Any person dismissed from the service may file a written answer and demand a hearing before the Civil Service Board, providing such answer or demand is filed with the Board within five (5) days after the serving of the notice of such dismissal. See Rule XI, Ord. 972."

Within five days thereafter the petitioner filed an answer thereto. The matter was set for hearing, but was continued for the reason that an action had been filed in the superior court of the county of Fresno by one Oliver P. Durr, who sought to permanently enjoin the Civil Service Commission from taking any further step or proceeding in the matter of hearing said charges, which charges were identical with those in the above-entitled action now under consideration, and pending the hearing of that action in the superior court the Civil Service Board was temporarily restrained from proceeding in the matter. Immediately after the termination of that action in the superior court the petitioner applied to this court for a writ of mandate directed to the respondent A. E. Sunderland as head of the police department of the city of Fresno and directed to William Glass as Commissioner of Finance of said city, requiring and directing respondents to cause to be paid to the petitioner his salary accruing subsequent to the ninth day of November, 1925. Both commissioners have appeared by filing demurrers and answers. As the respondent Glass is merely a formal party, in the interest of clarity we will

hereinafter use the word "respondent" as designating and referring to the Commissioner of Public Welfare.

[1] The petitioner contends that the paper dated November 9, 1925, on its face purports to be an absolute dismissal; that the respondent, A. E. Sunderland, as Commissioner of Public Safety and Welfare, has no power under the charter of Fresno and the ordinances of said city to dismiss a police officer, and that said paper is a void act. The respondent replies that the paper was not a void act and he cites section 22 of article III of the charter of Fresno, Statutes of 1921, page 1821. That section, among other things, provides: "No officer or employee of the city may be removed except for reasons that will promote the efficiency of the public service; and after the lapse of the probationary period, except as in this charter otherwise provided, no officer or employee may be removed except for reasons given in writing by the appointing officer, and the person whose removal is sought shall be furnished with a copy of the reasons for his removal and of any charges preferred against him and be allowed a reasonable time for personally answering the same in writing, and in such answer may demand a hearing upon the charges. If such demand is made the appointing officer shall furnish the Civil Service Board with the complaint or charges and answer, and the Civil Service Board shall then fix a time and place for, and, according to such rules and regulations as it may adopt, shall conduct a hearing upon the charges and answer, and the party whose removal is sought shall attend such hearing and may be heard in person or by attorney and produce witnesses. The Civil Service Board . . . shall not be bound by the technical rules of evidence and pleading, and upon said hearing the Civil Service Board may order the charges to be dismissed, in which case the officer or employee shall be restored to duty without prejudice, but if the charges are sustained, the officer or employee shall by virtue of said findings be removed unless the finding in either case is set aside by the city commission. There shall be no appeal from the judgment of the Civil Service Board as a matter of right on the part of . . . the officer or employee whose removal is sought but the city commission shall have power in its discretion to hear and determine appeals from the decisions of the Civil Service Board. . . . Pending the hear-

ing of any charges, . . . the officer seeking to make the removal may suspend the officer or employee whose removal is sought, such suspension to be without pay, unless the charges are dismissed." Respondent also cites section 19 of article III, which provides: "In addition to the foregoing matters, the Civil Service rules shall provide: . . . Subd. 6. For the regulation of removals from office subject to the provisions of this charter." Respondent also cites parts of rule XI of the Civil Service Board as enacted by Ordinance No. 972, as follows:

"Section 1. Removals or Reductions. (a) Removals . . . of a person in the classified service shall be made only after such person has been presented with the reasons for such removal or reduction, specifically stated in writing, by the appointing officer, but such person has the right to answer and demand a hearing, as provided by these rules. A removal or reduction has the same effect as to compensation as in case of suspension. A statement of the reasons and the reply must be forthwith filed, as a public record, with the Board.

"(b) Nothing herein contained shall limit the power of any superior officer to suspend a subordinate for a reasonable period, not exceeding thirty days, pending hearing and decision. Every such suspension shall be without pay; provided, however, that the Board shall have authority to investigate every such suspension, and in case of its disapproval, it shall have power to restore pay to the employee so suspended.

"(c) Nothing herein contained shall limit the power of any appointing officer to suspend or dismiss a subordinate for any cause which will promote the efficiency of the service, and within five days thereafter file with the Board written reasons for such action, containing the charges preferred and order of removal, if any, and forthwith serve the person whose removal is sought with a copy thereof, . . . Such appointing officer shall certify to the said service and immediately file the same with the Board. The person so served may personally in writing answer the charges preferred against him and file such answer with the Board, also affidavits in support thereof, if he so desires, and may demand a hearing on the charges, and a failure to so file an answer or demand a hearing on the charges within

said time shall be considered as a resignation of such person, in which case no trial shall be required, except at the request of the officer making or seeking the removal, and then only at the discretion of the Board. The Board may reinstate any officer or employee so removed after proper hearing. . . .

"Sec. 3. Suspensions. Pending action for removal or for disciplinary reasons, an employee may be suspended for a period not to exceed thirty days, without pay, but the reasons for suspension shall forthwith be furnished in writing to the Civil Service Board. No employee in the classified service shall be suspended except for reasons which will promote the good of the service.

"Sec. 4. Procedure. Each hearing upon charges and answer shall be had as soon as practical after answer is filed. . . . and upon said hearing the Board may order the charges dismissed, in which case the officer or employee shall be restored to duty without prejudice, but if the charges are sustained, the officer or employee shall by virtue of such findings be dismissed unless such findings be set aside by the City Commission."

Thereupon respondent contends that the writing dated November 9, 1925, although it uses the word "dismissal," does not use that word as a finality, but as a temporary deprivation of the petitioner from his office. There is force in the contention, otherwise the note appended at the end of the writing is given no force or effect, although that note advised the petitioner that he would be given a hearing as provided under rule XI if he filed an answer and demanded a hearing. Moreover, the petitioner so understood the paper. He promptly put in his answer and demanded a hearing. This act on his part finds no support in the charter and ordinance when a suspension or removal has become permanent—has ripened into an absolute dismissal. (*Stadler* v. *Detroit*, 13 Mich. 346.) The petitioner urges in this connection that the ordinance is unreasonable as being broader than the provisions of the charter. The point cannot be sustained because we do not find any language in the ordinance which purports to justify an absolute dismissal of a civil service employee until such individual has first been served with reasons in writing and has been given an opportunity to answer, and until a hearing has

been had. True it is that the charter does not use the word "dismiss" and that the ordinance does, in some places, use that word. However, taking the ordinance by its four corners, and reading the word "dismiss" together with the context, it is clear that the ordinance uses the word as synonymous with removal, temporary or permanent, in harmony with the context. It will be noted that the charter expressly confers the power to remove on the Civil Service Board. It will also be noted that the charter expressly provides that the preliminary steps will be taken by the appointing power, but the function of actually removing is vested in the Civil Service Board. It will also be noted that the charter expressly authorizes the appointing officer to suspend a subordinate pending the hearing before the Civil Service Board. Again, a temporary removal is a suspension and the charter impliedly recognizes a temporary removal because it is provided that if the charges are not sustained the employee "shall be restored to duty without prejudice." But before one can be restored he must have been displaced. Turning to rule XI, it will be observed that in subdivision (a) a permanent removal is provided for after hearing or opportunity for hearing; in subdivision (b) a suspension is provided for provided the Civil Service Board may investigate and approve or disapprove; in subdivision (c) a suspension or dismissal is provided for and the language used clearly indicates that the subordinate may, at the time the proceeding is initiated, be separated from his office, but that thereafter he is to be given a hearing if he demands it and, if the charges are sustained, then he will be permanently removed—that is dismissed. As against improper removals, the charter and the rules both enjoin on the Civil Service Board the duty of protecting the subordinate. The charter enjoins on the superior officer the duty of promoting "the efficiency of the public service." From all of these provisions it is clear that the charter and the rules enacted thereunder authorize (1) a permanent removal; (2) a suspension for disciplinary purposes; and (3) a suspension which will promote the efficiency of the service.

[2] It is further contended that the writing dated November 9, 1925, is insufficient because it does not specifically designate acts of malfeasance or nonfeasance, but it

will be noted from the charter provisions above quoted that the writing is sufficient if it states "the reasons" for the act of the superior officer. If we view the writing as made to "promote the efficiency of the service," it need not state acts of malfeasance or nonfeasance. It may state matters which tend to show a set of facts which may subsequently transpire as being without foundation, but until met and explained, or avoided, would tend greatly to hamper "the efficiency of the service," and to greatly embarrass the subordinate official in the discharge of his duties. Certainly such a situation is of such importance that the Civil Service Board should take jurisdiction, and if a demand is made therefor, conduct a hearing and make and enter such a determination within the powers conferred on it as may be sustained by the facts, and which determination will result in wholly removing the embarrassment or perhaps in a permanent removal. Furthermore, a supposititious case can readily be conceived where the superior officer would not be justified in going any further than stating the rumor or information without alleging the facts therein to be true. However, the writing dated February 1st does designate specifically certain charges. Assuming that the attack on the writing dated November 9, 1925, is sufficient, no attack has been made on the sufficiency of the later writing. We know of none. A similar question was before the supreme court of Minnesota in the case entitled *In re Mason,* 147 Minn. 383 [181 N. W. 570]. At page 386 the court said: "It will be observed that the statute does not limit the time nor prescribe the manner in which charges shall be presented, but merely provides that the accused officer shall be furnished a copy of the charges and be afforded an opportunity to make his defense. This requires a hearing, the purpose of which is to determine whether the officer has been guilty of the alleged misconduct. The governor, upon whom the statute imposes the duty to determine this question, is not a court and is not bound by the strict rules which govern trials in court. (*State ex rel.* v. *Common Council,* 53 Minn. 238 [39 Am. St. Rep. 595, 55 N. W. 118]; *State ex rel.* v. *Megaarden,* 85 Minn. 41 [89 Am. St. Rep. 534, 88 N. W. 412]; *State ex rel.* v. *Eberhart,* 116 Minn. 313 [Ann. Cas. 1913B, 785, 39 L. R. A. (N. S.) 788, 133 N. W. 857].)

The statute is remedial rather than penal in its nature; it provides for the removal of an unfaithful officer to protect the public, secure the faithful performance of official duties, and keep the public service above reproach, not to punish the officer for his derelictions. (22 R. C. L. 573, sec. 284; *Territory* v. *Sanches,* 14 N. M. 493 [94 Pac. 954], and note appended to report of case in 20 Ann. Cas. 109; also note found in 135 Am. St. Rep. 250.) The restrictions which hedge about a trial in court on an indictment and limit the power to amend the indictment do not apply; and we find no warrant in the statute for saying that only one charge or set of charges may be considered, and see no reason why additional charges may not be presented, either independently of the original charges, or by way of amendment to them. The question to be determined is whether the accused officer has so misconducted himself in respect to the performance of his official duties that the good of the public service requires his removal from office. And the officer, or special tribunal, charged with the duty to determine this question, may, in our opinion, in the proper exercise of his discretion, permit the presentation of further and additional charges setting forth facts which, if true, have a direct and material bearing upon the question to be determined. Of course, the accused officer must be given a proper opportunity to meet the additional charges after they have been furnished to him. In the present case, the relator was given ample opportunity to present all his evidence and make a full defense.''

A similar contention was made in *People* v. *Common Council,* [85 Hun, 603], 33 N. Y. Supp. 165. At page 168 the court said: ''The relator attacks the jurisdiction of the common council, in this: that he had not received the notice required by Statute, of 14 days, of the charges against him. This contention is not well founded, as the proof shows that he had the 14-days notice of the substance of the charges upon which he was ultimately convicted. The amendments of one or two of the charges, which occurred during the progress of the investigation, were but an amplification of the original charges, and made in his presence, and an adjournment of several days was taken by the common council to give him an oppor-

tunity to meet the amended charges, and the relator had every reasonable opportunity to do so."

[3]    It thus appears that the decisions dealing with the subject of the removal of officers concede the power to allow amendments. Such power is further evidenced by the charter provision that "The Civil Service Board . . . shall not be bound by the technical rules of evidence and pleading." When the amendment amplifies but does not change the cause of action the amended pleading relates back to the date when the original pleading was filed. (31 Cyc. 464; *Barber* v. *Reynolds,* 33 Cal. 497, 501; *Humphry* v. *Buena Vista Water Co.,* 2 Cal. App. 540, 542 [84 Pac. 296]; *Claussen* v. *Chapin,* 69 Mont. 205 [221 Pac. 1073, 1075].) If a new cause of action is introduced by the amendment such new cause of action relates back to the date of filing the amendment. (*Anderson* v. *Mayers,* 50 Cal. 525.) From the record before us in this collateral attack we are not informed, and we may not assume that the new matter is otherwise than an amplification of the paper dated November 9, 1925. In this connection the petitioner contends that the writing of November 9, 1925, was so defective that there was nothing to amend and that the right to amend implies that there is something to amend by. (31 Cyc. 362.) In answer to that contention it must be said that a most casual reading of the writing referred to shows that it was an attempt by the writer to execute the initiatory paper mentioned in section 22 of article III of the charter, which required that the superior officer should furnish to the person whose removal is sought "a copy of the reasons for his removal and of any charges preferred against him." The doctrine that there must be something to amend by has never obtained in an unlimited degree in this state. From an early date the power of the courts to allow amendments has existed and the limit to such power was rested on the principle that the amendment should be allowed if it did not change the entire gravamen of the pleading. (*Baker* v. *Bartol,* 6 Cal. 483; *Nevada County & Sacramento Canal Co.* v. *Kidd,* 28 Cal. 673.) The statute does not contain any provisions to the effect that the powers of the Civil Service Board are more restricted than the powers of the courts under similar circumstances.

[4] Except by his answer interposed, the petitioner did not question the sufficiency of the charges as stated in the paper dated November 9, 1925, or as stated in the paper dated February 1, 1926. The Civil Service Board has never passed on either of those attacks. Unless the written charges are so defective as to be void, the attack may not be made in the courts for the first time. (*People ex rel. Gibson* v. *French,* 49 Hun, 607 [1 N. Y. Supp. 638, 639]; *People ex rel. Brady* v. *Brookfield,* 6 App. Div. 445 [39 N. Y. Supp. 677, 678]; *Joyce* v. *City of Chicago,* 216 Ill. 466, 471 [75 N. E. 184]; *Sullivan* v. *Lower,* 234 Ill. 21, 23 [84 N. E. 622]; *Schlau* v. *City of Chicago,* 170 Ill. App. 19, 23.)

We are unable to hold that the papers purporting to state the reasons for removal, or charges, are void. It follows that the Civil Service Board has not exceeded its jurisdiction. Having jurisdiction of the controversy all questions of fact are for the determination of that board. The state of Wisconsin has a statute that is very similar to the provisions quoted from the charter of the city of Fresno. That statute was before the supreme court of Wisconsin in the cases entitled *State ex rel. Wagner* v. *Dahl,* 140 Wis. 301 [122 N. W. 748], and the companion cases, *State ex rel. Hayden* v. *Arnold,* 151 Wis. 19 [138 N. W. 78], and *State ex rel. Bannen* v. *Arnold,* 151 Wis. 38 [138 N. W. 85]. In the Dahl case, at page 305, the court said: "In *State ex rel.* v. *Houser,* 122 Wis. 534, [100 N. W. 964], the construction of section 35, St. 1898, was involved. In the event of two conventions of the same party being held, the Secretary of State was required to give preference in designation on the official ballot to the nominees certified by the state central committee. The statute did not provide for any review of the action of such committee in making its certification. The right of the court to review the decision of the committee was combatted, and it was held that where a new right is created by statute and the statute provides a method by special tribunal for the enforcement or protection of such right, and makes no provision for a review of the decision of such tribunal, the remedy given is exclusive, provided the tribunal acts within its jurisdiction. Op. Justice Marshall, page 570 of 122 Wis. [100 N. W. 975], and of the present

Chief Justice, page 595 of 122 Wis. [100 N. W. 984]. Such is the law elsewhere generally. *Miller* v. *Clark*, 62 Kan. 278 [62 Pac. 664]; *Chapman* v. *Miller*, 52 Ohio St. 166 [39 N. E. 24]; *People* v. *Roosevelt*, 151 N. Y. 369 [45 N. E. 840]; *People* v. *District Court*, 32 Colo. 15 [74 Pac. 896]; *State* v. *Abbay*, 82 Miss. 559 [35 South. 153]; *State* v. *Crittenden*, 164 Mo. 237. [64 S. W. 162]. We have in this case a right created by statute by which certain state employees may not be discharged except for just cause, and the power of removal for such cause is vested in the appointing officer, with no provision in the law for reviewing his decision, so that the situation is similar to that before the court in *State ex rel.* v. *Houser, supra.*" And, in the case last cited, the court said, commencing on page 39: "This case, in the main, is ruled by the decision in *State ex rel. Hayden* v. *Arnold*, 151 Wis. 19 [138 N. W. 78] mentioned in the statement. The only difference as to facts is that the cause assigned for removal did not exist. But we are constrained to hold that such circumstance cannot make any difference. Manifestly, the legislative purpose was that relief from any mistake of that sort should be sought by the specific means provided in the civil service law. The relator in accepting office under it submitted to its provisions, including those empowering the commissioner to remove him at pleasure, filing a statement of the reasons, to which, as indicated in the former case, the law gives opportunity to answer. . . . Applying the foregoing, in view of the fact, which satisfactorily appears, that the tax commissioner acted in the removal proceedings in the honest belief that the cause assigned for displacing relator existed, the latter's remedy, if such cause did not exist, was under the civil service law, not by ignoring it and appealing to the courts in a *mandamus* or other proceeding. If such were not the case then, every time an appointing authority under the civil service law acts under the correlative power to discharge or remove, he would do so in peril of having to justify his action in judicial proceedings by showing satisfactorily to some court of general jurisdiction within his judicial district, that the cause assigned exists and is sufficient. Certainly the Legislature did not contemplate any such thing. Nothing of the sort is suggested, expressly, in the language of the law. Nothing of the sort

is suggested by it inferentially. The legislative policy, evidenced by the enactment, is repellant to any such thing. To engraft upon it any such an incident by construction, would undermine the law by taking from it one of the most essential elements of the legislative plan, i. e., to give the appointing authority the largest practicable measure of discretionary power to act summarily, in all cases, respecting the incumbency of subordinate positions, with reasonable opportunity to correct mistakes upon the same being brought to attention in the manner specified; such course being supposed to be promotive of, if not actually necessary to, the best attainable performance of subordinate duties.''

[5] Finally, the petitioner asserts that he has been suspended more than thirty (30) days and that a suspension for more than thirty (30) days is prohibited by the provisions of Ordinance No. 972. This contention rests on a confusion or intermingling of two separate provisions of the ordinance. It is provided that a subordinate may be disciplined by suspension. It is also provided that the superior may initiate removal proceedings and pending the hearing thereof before the Civil Service Board that the subordinate officer may be suspended. As a disciplinary measure the ordinance provides that a suspension may not be for a period exceeding thirty (30) days. As an ancillary measure in removal proceedings no limit is placed on the period of suspension. Whether the suspension is of the first class or the second class, the ordinance provides that the subordinate may, on demand, be given a speedy hearing and that the period of thirty (30) days will not necessarily be consumed in either case. Moreover, the facts above recited show that any delays which have occurred in the instant case were the delays caused or requested by the petitioner and not by his superior officers. Under very similar provisions contained in the New York charter the supreme court of that state made the same ruling. (*Halpin* v. *City of New York,* 54 Misc. Rep. 128 [105 N. Y. Supp. 520].)

For the reasons which we have recited we therefore hold that the writing signed by the respondent A. E. Sunderland November 9, 1925, was, under the attack as made in this case, sufficient to initiate proceedings looking toward

a removal and that all other questions are to be addressed, in the first instance, to the Civil Service Board. In view of what we have said it is unnecessary to pass on the demurrers. The respondents are entitled to judgment on the merits. It is so ordered.

Langdon, P. J., and Nourse, J., concurred.

A petition by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 28, 1926.