[Sac. No. 5765. In Bank. Oct. 17, 1946.]

CLIFTON G. REYNOLDS, Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

Robert W. Kenny, Attorney General, Allen L. Martin and J. Albert Hutchinson, Deputies Attorney General, for Appellant.

B. Grant Taylor, Edwin E. Grant and Jesse W. Curtis for Respondent.

Bernard C. Brennan and John W. Loucks as Amici Curiae on behalf of Respondent.

GIBSON, C. J.—This is a companion case to *Covert v. State Board of Equalization, ante,* p. 125 [173 P.2d 545]. As in the Covert case, the matter came to this court by appeal from a judgment of the superior court issuing a peremptory writ of mandate directing the State Board of Equalization to revoke the liquor license* of a cafe. The principal question involved is whether the board has the power to suspend as well as revoke a license. With respect to this issue, none of the material allegations in the petition for the writ were denied by the answer, and the case was submitted to the trial court on the pleadings.

It appears that prior to August, 1943, the licensees, Joe Enos and Enrico Olcese, operated a cafe in Santa Clara County and held a license issued by respondent board for selling intoxicating beverages, apparently for consumption on the premises. The petitioner filed a complaint with the board alleging, among other things, that the licensees maintained a public saloon, selling intoxicating liquors, although the premises and business did not constitute a bona fide hotel, restaurant or other public eating place, in violation of section 22 of

---

*At the time of the hearing before the board the licensees held two on-sale licenses, one relating to distilled spirits and one to beer and wine, and a third license permitting bottling of wine. Under the 1945 amendment to section 6 of the Alcoholic Beverage Control Act (Stats. 1945, pp. 2615, 2621; 2 Deering's Gen. Laws, Act 3796, § 6) a provision was made for a single ''on-sale general license'' covering all acts permitted by these licenses and, since it may be assumed that the cafe is now operated under such a license, we have here used the term in the singular.

article XX of the California Constitution. In December, 1943, a hearing was held before a representative of the board. The representative made findings to the effect that the licensees did not maintain a bona fide public eating place; that no food was customarily served excepting sandwiches sold at cost; and that practically the entire business consisted of the sale of alcoholic beverages. In accordance with the recommendation of its representative, the board, in February, 1944, notified the licensees that their license was indefinitely suspended. Petitioner, asserting that the order of suspension was inadequate, asked for a reconsideration and that the license be revoked. In March, 1944, the board denied the request for reconsideration and at the same time reinstated the license.

The petition for mandate, filed shortly thereafter, alleged that on the facts found by the representative there was a clear duty to revoke the license and that the board was without power to reinstate it.

The trial court concluded that the indefinite suspension was insufficient; that it was the duty of the board to revoke the license; and that the board had no right to restore the license except upon a new application. The judgment provided that a writ issue directing the board to revoke the license forthwith.

Petitioner contends, in support of the judgment, that when the premises ceased to be a bona fide restaurant or other public eating place they ceased to qualify under the Constitution as a proper place for the sale of intoxicating liquor for consumption on the premises and that the license thereupon became invalid and void and was not susceptible of suspension.

Section 22 of article XX of the California Constitution prohibits consumption of intoxicating liquor in any public saloon or public barroom, but provides that sales for consumption on the premises may be made in any bona fide hotel, restaurant or other public eating place. Under the facts found by the board and admitted in the pleadings, it is clear that at the time of the suspension the cafe had ceased to qualify as a proper place for the sale of alcoholic beverages. (See *Covert* v. *State Board of Equalization, ante,* p. 125 [173 P.2d 545], for a discussion of what constitutes a bona fide restaurant.)

Section 22 further provides that the State Board of Equalization "shall have the exclusive power to license the ... sale of intoxicating liquors ... and shall have the power, in its discretion, to deny or revoke any specific liquor license if it shall determine for good cause that the granting or con-

tinuance of such license would be contrary to public welfare or morals.'' Although it may be conceded that under this section there would be an abuse of discretion if the board purported to authorize the sale of liquor for consumption on the premises when the business there conducted failed to meet the prescribed qualifications, it does not necessarily follow that the board is required, as a matter of law, to revoke, rather than suspend, the license. Neither the language nor purpose of the section compels such a conclusion.

Under the general principle that the greater contains the less (adopted as a maxim by Civ. Code, § 3536), it has frequently been held that statutes authorizing a board or commission to revoke, terminate, or dismiss include the lesser penalty of suspension or limitation. (See, for example, *Schnitzler*, v. *Yellowley*, 290 F. 849, 852-853; *Klatt* v. *Guaranteed Bond Co.*, 213 Wis. 12 [250 N.W. 825, 830]; *Goldsmith* v. *Board of Education*, 66 Cal.App. 157, 163-164 [225 P. 783].)

The Legislature has interpreted section 22 of article XX of the Constitution as conferring a power to suspend. Both the Liquor Control Act of 1933 (Stats. 1933, ch. 658, §§ 19, 20, 22, 23 and 25) and the superseding Alcoholic Beverage Control Act of 1935 (Stats. 1935, p. 1123; 2 Deering's Gen. Laws, Act 3796, §§ 38e, 40-43, 46, 48.6) authorized suspension as well as revocation. ■ It is well settled that ''When the Constitution has a doubtful or obscure meaning or is capable of various interpretations, the construction placed thereon by the Legislature is of very persuasive significance.'' (*Delaney* v. *Lowery*, 25 Cal.2d 561, 569 [154 P.2d 674].)

■ There is nothing in the Constitution which supports petitioner's contention that a liquor license automatically becomes void, beyond any possibility of revival, whenever the licensee fails to sell food on the premises. The language of section 22 indicates that some action by the board is necessary before a license is terminated. The rule suggested by petitioner, moreover, is impracticable and would lead to much uncertainty and confusion, since persons apparently holding valid licenses would nevertheless be subject to charges that because they may have, at some time in the past, made insufficient sales of food, all subsequent sales of liquor were illegal.

■ The board, of course, has a duty to enforce the prohibition against sales of liquor in public saloons, but the Constitution does not require that this restriction be carried out by revocation rather than by suspension. It is obvious that a

suspension until such time as the qualifications are met will completely ban all sales in violation of the law.

The case of *Board of Trustees of Stanford University* v. *State Board of Equalization,* 1 Cal.2d 784 [37 P.2d 84, 96 A.L.R. 775], relied on by petitioner, does not hold that the board is compelled to revoke a license for every violation of the Constitution, however small. The court there directed the board to cancel a license for a violation of a statute, but apparently no question was raised as to the possibility of merely suspending the license.

We conclude, therefore, that the board did not abuse its discretion in suspending, rather than revoking, the license.

Petitioner contends that the board should not have reinstated the license, arguing that, since the license was void and had to be revoked, there was nothing to suspend and an application for a *new license* was necessary. This argument must fail, however, because, as petitioner concedes, it depends upon the assumption that the license was void and was required to be revoked.

Finally, it was alleged in the petition for mandate that the board reinstated the license ''without evidence and findings of a change in the mode and character of business conducted.'' The answer of the board, however, denied this allegation and stated that its representatives had made a complete investigation, discovering that a change in conditions had taken place since the suspension so as to warrant reinstatement. Petitioner presented no evidence in support of his allegation, and the record does not contain sufficient facts either to show what occurred at the time of the reinstatement or to permit a court to review the procedure followed by the board. Moreover, in the absence of evidence to the contrary, it must be presumed that the board acted properly in the performance of its official duties. (Code Civ. Proc., § 1963, subd. 15.) Accordingly, we hold that petitioner has not sustained the burden of proving the allegations of the petition with respect to the reinstatement of the license.

The judgment is reversed.

Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied November 14, 1946. Shenk, J., and Edmonds, J., voted for a rehearing, and the following opinion was then filed:

SHENK, J., Concurring and Dissenting.—I favor a reconsideration of one important phase of this case and will state my reasons.

I am in accord with the application in this and in the companion case of *Covert* v. *State Board of Equalization, ante,* p. 125 [173 P.2d 545], of our constitutional provision (art. XX, § 22) which prohibits the consumption of intoxicating liquors in any public saloon or public barroom, but provides that sales for consumption on the premises may be made in bona fide hotels, restaurants, or other public eating places. These provisions are not capable of misunderstanding and have been known to all liquor dealers and enforcement agencies and officers since 1934. A declaration by this court of what the Constitution plainly says in that regard is no news to them or to anyone familiar with liquor control. That phase of the litigation is obviously correctly decided.

But I see no necessity or justification for reading into the Constitution a provision which has the effect of relieving an admitted violator of the law of the consequences of his unlawful acts. A revocation of his license should be compelled.

The same section of the Constitution (art. XX, § 22) which authorizes the licensing and sale of intoxicating liquors also vests the regulation of the liquor traffic exclusively in the State Board of Equalization. That section says that that board shall have the power "to deny or revoke" any specific liquor license. The power to "suspend" is not included except by the action of this court. By section 22 of article I of the same Constitution it is provided that "the provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." This means that when the Constitution speaks in unmistakable terms everyone subject to its mandate, including the executive, legislative and judicial departments, must comply. (*People* v. *City of San Buenaventura,* 213 Cal. 637, 639-640 [3 P.2d 3]; *People* v. *California Fish Co.,* 166 Cal. 576, 587 [138 P. 79]; *Matter of Maguire,* 57 Cal. 604, 609 [40 Am.Rep. 125]; *McDonald* v. *Patterson,* 54 Cal. 245, 247; *Shay* v. *Roth,* 64 Cal. App. 314, 316 [221 P. 967].) Neither department may add to nor take away anything from its plain terms. There is no uncertainty or ambiguity about the term "revoke." Its plain meaning is to cancel and annul. To "suspend" plainly means to stop temporarily, to hold in abeyance. Without any doubt

the framers of the constitutional provision deliberately omitted the word "suspend"—a word of common use in liquor regulations and enforcement—and likewise deliberately used the sole word "revoke" in that connection. When the term "suspend" was so deliberately omitted the court is not justified in changing the Constitution to that extent by inserting it.

If the language used in a constitutional provision plainly and unequivocally shows a certain and definite purpose to be accomplished thereby it is the duty of the courts to carry it into effect. (*Boca Mill Co.* v. *Curry,* 154 Cal. 326 [97 P. 1117].) It is as much the duty of the court to see that the plain provisions of the Constitution are not evaded as it is to see that they are not directly violated. (*Parker* v. *Otis,* 130 Cal. 322 [62 P. 571, 927, 92 Am.St.Rep. 56].) In the grant of power and the mode of its exercise there is an implied negation that what is included excludes that which is inconsistent, and that when a thing is to be done in a particular way it shall not be done otherwise. (*Martello* v. *Superior Court,* 202 Cal. 400 [261 P. 476].)

Courts are no more at liberty to add provisions to what is declared in the Constitution in definite language than they are to disregard existing express provisions of the Constitution. (*Ross* v. *City of Long Beach,* 24 Cal.2d 258, 260 [148 P.2d 649]; *People* v. *Campbell,* 138 Cal. 11, 15 [70 P. 918].)

Since the same rule is binding on the legislative department the Legislature had no more authority than the courts to insert in the Constitution something which is not there and was deliberately excluded. This is especially true of the attempt of the Legislature to enlarge upon the powers of the board by the insertion of the word "suspend" in the Alcoholic Beverage Control Act of 1935 (Stats. 1935, p. 1123, 2 Deering's Gen. Laws, Act 3796). Furthermore, the Liquor Control Act of 1933 (Stats. 1933, p. 1697) was not effective as a grant of power to "suspend" because the constitutional amendment in 1934 adopted the 1933 act only insofar as its provisions were not inconsistent with the constitutional section. Since the power to suspend is obviously inconsistent with the sole power to revoke, the 1933 act was superseded by the Constitution and became to that extent entirely ineffective.

Edmonds, J., concurred.