[Civ. No. 9228.   Third Dist.   July 19, 1957.]

UNDERWOOD LAND AND DEVELOPMENT COMPANY (a Corporation) et al., Petitioners and Appellants, v. MILO F. BRADSHAW et al., Respondents and Appellants.

Roy Lower and George Falasco for Petitioners and Appellants.

Frederick W. Reyland, Jr., County Counsel (Stanislaus), William R. Mitchell, Assistant County Counsel, David G. Dunford, Deputy County Counsel, J. Wilmar Jensen and Gerald V. Underwood for Respondents and Appellants.

VAN DYKE, P. J.—This is an appeal from an order in mandate setting aside orders made by the Board of Supervisors of Stanislaus County during proceedings for creation of a local hospital district. The court, having set aside the board's orders, remanded the proceedings for further consideration. The board appealed and this court, upon request, granted supersedeas. Thereafter the election which had been ordered by the board was held, resulting in a vote favorable to the creation of the district and the board declared its creation.

It is the contention of appellants that the trial court erred in deciding, (1) that during the formation proceedings the board lost jurisdiction when it made orders excluding a sufficient area of land within the proposed boundaries so that the greater land mass then lay in the neighboring County of Merced, and, (2) in deciding that in refusing to exclude certain lands the board acted without sufficient evidence and was therefore guilty of an abuse of discretion. A consideration of these contentions requires a reference to the governing statutes. The controlling legislation is found in sections 58000 and following of the Government Code and in sections 32000 and following of the Health and Safety Code. The Government Code contains a general procedural scheme for the organization, operation, government, consolidation and dissolution of local districts. (Gov. Code, § 58001.) It is provided in section 58004 of that code that the words "supervising authority" mean the board of supervisors of the county in which is situated all or most of the land in a district or the body authorized by law to initiate or hear proceedings for the creation of a district. Sections 58030 and 58031 provide that if, as here, the principal act requires a petition, then formation proceedings shall be so commenced, and the petition shall be filed with "the supervising authority." The local hospital district law does require such a petition and the petition by which these formation proceedings were initiated set forth and described the district boundaries as proposed by petitioners. Because by the boundaries so described the greater land area lay in Stanislaus County, the petition was properly filed with the respondent board as constituting the supervising authority. It is conceded that it must have been so filed. (Gov. Code, §§ 58004 and 58031.) Respondent board, therefore, properly received and acted upon the petition and in due course noticed and held a hearing as required by sections 58060-58110 of the Government Code. At

that hearing the board acted upon written and oral protests by persons interested in the formation of the proposed district (Gov. Code, § 58097), acted upon written requests for exclusion of land from the proposed district, and finally determined the project to be feasible, economically sound and for the public interest. Having so acted, the board fixed the boundaries. (Gov. Code, § 58105.) During the hearing the board excluded a body of land. A number of requests for exclusion were denied. The result was that, when the boundaries were fixed by the board's order at the conclusion of the hearing there was a greater area of district land within the county of Merced than within the county of Stanislaus.

We will first consider the contention of the appellant board that it did not lose jurisdiction to complete formation proceedings when by fixing the boundaries of the district as it did Merced County became the county within whose boundaries lay the greater land area. With this contention we agree. ▮▮▮ We think it clear that the controlling statutes do not contemplate that there shall be a change of supervising authority during formation proceedings and that, on the other hand, it is contemplated thereby that the initial supervising authority shall complete formation proceedings notwithstanding that it may happen, through inclusion and exclusion action by the authority, that some other county contains more lands than the home county of the acting board of supervisors. Certainly if the Legislature contemplated such a change of supervising authority it has not, as it reasonably would have done, set up any proceedings whereby the formation proceedings and the records thereof would be transferred to the board of supervisors of another county. Nor has it specifically stated that there would be any change in supervising authority. Nor is there any apparent reason why such a change would be deemed proper or beneficial to persons owning land within the county then having the greater land area. Nor will the board of supervisors constituting the original supervising authority have material control over the operation of the hospital district once it has been formed. In all such matters the district will be autonomous. If the contention of petitioners in mandate herein be accepted, then we can contemplate that there may be during formation proceedings change after change of supervising authority according as the land mass is affected by inclusion or exclusion orders made by the boards involved. Although in this case there are only two counties having land within the proposed district

there might in another case be numerous counties involved, with the possible result, if supervising authorities can be so changed, that the proceedings will circulate among the various boards of supervisors to their complete final frustration. We hold that the respondent board, having acquired jurisdiction as supervising authority through the filing with it of the petition, continued to be the supervising authority with jurisdiction to complete the formation proceedings, including the fixing of the boundaries, the calling of the election and the making of the final order declaring the district formed.

At the final hearing petitioners in mandate sought the exclusion of their lands from the proposed district upon the ground that they would not be benefited by the district. The respondent board received evidence upon the issue thus presented, found that petitioners' lands would be benefited, and refused exclusion. Upon this issue the question before the trial court was whether or not, in refusing to exclude petitioners' lands, the board was guilty of an abuse of discretion. "Abuse of discretion is established if . . . the order . . . is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) Our examination of the record convinces us that there was substantial evidence supporting the findings and that the findings support the challenged orders. Abuse of discretion was therefore not established. The following appears from the transcript: Generally speaking, the area sought to be excluded constitutes lands presently used mainly as hunting preserves and for livestock grazing. There are presently few inhabitants and the areas are largely inaccessible by road. Some of them at least are nearer existing private hospitals than they will be to the proposed hospital if it is located in the more densely populated portions of the district. However, these areas are on the edge of change, speaking in terms of population. Irrigation is contemplated and approaching. Roads are already planned and it is reasonable to suppose that the present paucity of population will rapidly disappear, since essentially the areas are productive and if made susceptible to irrigation and reachable by roads will be developed into productive farm lands, with a consequent influx of inhabitants. It was also shown that during the hunting seasons there were great numbers of persons engaged in that sport and subject to its hazards. As required by the controlling statutes, the State Department of Public Health certified to the board that there was a need for hospital beds and hospital service in the area

of the proposed district, and that the need was not fulfilled by existing hospital services and would not be by pending hospital construction. This report was made responsive to the requirements of section 32002 of the Health and Safety Code. That section provides:

". . . [N]o hearing upon the petition to form a hospital district shall be held until there shall have been filed with the supervising authority a certificate from the State Department of Public Health stating its findings in accordance with the standards established for allocated funds under the California Hospital Survey and Construction Act, upon the following facts:

"(a) The need for hospital beds in the hospital service area to be served.

"(b) The fulfillment of needs in the service area based upon hospital beds in existence or under construction."

The department's findings, received and considered by the respondent board, furnished evidence that there was a need for hospital beds in the hospital area to be served. (Code Civ. Proc., § 1963, subd. 15; *Reynolds* v. *State Board of Equalization,* 29 Cal.2d 137, 141 [173 P.2d 551, 174 P.2d 4].)

Upon the whole record it is our view that the challenged findings of the board are supported by substantial evidence and that there has been no abuse of discretion.

The orders in the mandamus proceeding herein appealed from are reversed and the trial court is directed to enter its order discharging the alternative writ.

Schottky, J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.