The **NORTH DAKOTA GAME AND FISH DEPARTMENT,** Petitioner and Appellant,

v.

Sidney **BRASHEARS,** Respondent and Appellee.

Civ. No. 10208.

Supreme Court of North Dakota.

Oct. 20, 1982.

---

DeNae H.M. Kautzmann and Kathryn L. Dietz, Asst. Attys. Gen., Bismarck, for petitioner and appellant; argued by Kathryn L. Dietz.

Chapman & Chapman, Bismarck, for respondent and appellee; argued by Charles L. Chapman, Bismarck.

PAULSON, Justice.

This is an appeal by the North Dakota Game and Fish Department [Department] from a judgment of the District Court of Burleigh County entered on March 24, 1982. We affirm in part and reverse in part.

On August 4, 1981, Sidney Brashears, a wildlife resource management biologist for the Department, was suspended from duty without pay by the Department pending a removal hearing. This suspension without pay was made pursuant to Section 8–2–1 of the North Dakota Personnel Policies, which provides:

> "The appointing authority may, after written notice, suspend any employee without pay for misconduct or other just cause for a period not to exceed thirty calendar days. A permanent employee shall have the right to appeal."

On August 11, 1981, Dale Henegar, North Dakota Game and Fish Commissioner, filed written verified charges against Brashears with North Dakota Governor Allen I. Olson and requested the Governor to initiate removal proceedings, pursuant to § 20.1–02–19 of the North Dakota Century Code.[1] On

---

1. Section 20.1–02–19, N.D.C.C., provides:
   "20.1–02–19. *Removal proceedings—Game and fish hearing board.*—The removal of all game and fish employees other than the deputy commissioner, and temporary, part-time, or probation appointees may be insti-

October 6, 1981, following Governor Olson's determination that the charges constituted grounds for Brashears's removal, a hearing was held before the Game and Fish Hearing Board.

Governor Olson issued a notice of suspension on October 20, 1981, ratifying the Department's August 4, 1981, suspension of Brashears and ordered that such suspension continue until final determination of the matter by the Game and Fish Hearing Board. On November 19, 1981, the Game and Fish Hearing Board issued its findings of fact, conclusions of law, and order. The Hearing Board found that the charges filed against Brashears constituted grounds for disciplinary action and ordered that "Brashears be suspended without pay from his employment ... from August 4, 1981, through November 30, 1981".

On December 18, 1981, Brashears appealed the Hearing Board's order to the District Court of Burleigh County. He claimed as a specification of error that the Hearing Board was without authority to impose the suspension without pay from August 4, 1981, through October 20, 1981, because the Governor did not exercise his "exclusive statutory authority" to suspend until October 20, 1981. After determining that it had jurisdiction to hear the appeal, the district court agreed with Brashears, finding that upon the commencement of removal pro-

ceedings pursuant to Chapter 20.1-02, N.D. C.C., only the Governor can suspend the accused person without pay, pursuant to § 20.1–02–21, N.D.C.C., and under the circumstances of this case, the Governor's attempt to make the October 20, 1981, order for suspension without pay retroactive was null and void. The district court thus concluded that Brashears was entitled to receive his pay from August 11, 1981, which is the date the removal procedure was commenced, through October 20, 1981, which is the date the Governor suspended him without pay.

The Department appeals from the judgment and presents the following issues for review: (1) whether or not the district court had subject matter jurisdiction to hear Brashears's appeal from the Hearing Board's decision, and (2) whether or not the North Dakota Game and Fish Hearing Board had authority to suspend Brashears without pay from August 11 to October 20, 1981.

I

■ The Department contends that the district court lacked subject matter jurisdiction to hear Brashears's appeal.[2] It argues that without express statutory authority no right of appeal from a decision of an administrative body exists. The Department's ar-

tuted only by the filing of a verified written charge with the governor. If the governor believes such charges constitute grounds for removal, he shall order a hearing thereon, on fifteen days' notice to the individual accused, before a hearing board consisting of the governor as chairman, the secretary of state, and the attorney general. If the governor believes that such charge or charges do not constitute grounds for removal, he shall dismiss the charges forthwith."

**2.** Although the district court specifically stated in its judgment that "The Court has jurisdiction of this matter and of the parties herein.", it does not appear that the Department contested jurisdiction at the district court proceedings. The Department first raised the issue in its supplemental brief filed the day before oral arguments before this Court. However, it is a well-established rule that subject matter jurisdiction cannot be conferred by agreement, consent, or waiver, see State v. Tinsley, Crim. No.

834, slip op. at 4, 325 N.W.2d 177, 179 (N.D.1982); Sturdevant v. SAE Warehouse, Inc., 270 N.W.2d 794, 798 (N.D.1978); Woodland v. Woodland, 147 N.W.2d 590, 600 (N.D.1967); In Re Murray, 145 N.W.2d 899, 903 (N.D.1966), overruled on other grounds, Kee v. Redlin, 203 N.W.2d 423, 426 (N.D. 1973); In Re Reynolds' Will, 85 N.W.2d 553, 563 (N.D.1957); Bryan v. Miller, 73 N.D. 487, 502, 16 N.W.2d 275, 284 (1944), and, thus, questions concerning subject matter jurisdiction may be raised by any party or the court at any stage of the proceeding. See Goodman Investment, Inc. v. Swanston Equipment Co., 299 N.W.2d 786, 790 (N.D.1980); Center State Bank, Inc. v. State Banking Board, 276 N.W.2d 132, 134 (N.D.1979); In Re Estate of Brudevig, 175 N.W.2d 574, 577 (N.D.1970), overruled on other grounds, Liebelt v. Saby, 279 N.W.2d 881, 884 (N.D.1979).

gument is premised on § 20.1–02–22 of the North Dakota Century Code, which provides for appeals from hearing board determinations:

> "*20.1–02–22. Appeal to district court.*—An individual *dismissed* by order of the hearing board, may appeal to the Burleigh County district court. This appeal shall be taken and determined in the manner provided by chapter 28–32." [Emphasis added.]

Because Brashears was "suspended" rather than "dismissed", the Department urges that the district court lacked jurisdiction to hear the appeal and, therefore, it must be dismissed.

We decline to adopt such a narrow interpretation of the statute. Prior to the enactment of the current statutory scheme relating to the removal of Department employees, the Game and Fish Board had authority to remove an employee from office "without preferring charges and without hearing". *Hartung v. Manning,* 50 N.D. 478, 481, 196 N.W. 554 (1923). In 1959, the Legislature enacted this statute (formerly § 20–0205 and now codified under Chapter 20.1–02, N.D.C.C.) for the purpose of patterning appointment and removal procedures of Game and Fish Department personnel after those of the State Highway Patrol, giving tenure rights to Game and Fish employees because it was believed that such employees deserved this security as specialists and technicians in their chosen fields. *See* Minutes of the Senate Natural Resources Committee, 36th Legislative Assembly, January 30, 1959 (S.B.111). Thus, it is clear that this statutory framework evinces a definite recognition of the importance of tenure and job security for Department personnel.

The Supreme Judicial Court of Massachusetts addressed an analogous issue in *Setterlund v. Groton-Dunstable Regional School Committee,* 382 Mass. 328, 415 N.E.2d 214 (1981). In *Setterlund,* the plaintiff contended that his reduction from full-time teacher to part-time teacher constituted sufficient "dismissal" to entitle him to review of the committee's action in the Superior Court. The committee in that case had similarly argued for a construction of "dismissal" as meaning complete separation from employment. We find persuasive the following rationale of the Massachusetts Court in *Setterlund, supra* 415 N.E.2d at 216 [quoting from *Caviness v. Bd. of Ed. of Ludlow Community, Etc.,* 59 Ill.App.3d 28, 31, 16 Ill.Dec. 526, 527–28, 375 N.E.2d 157, 158–159 (1978)]:

> "For purposes of claiming entitlement to the procedural protection afforded by G.L. c. 71, § 43A, we think that a tenured teacher who is reduced to part-time employment without his consent has been 'dismissed.' '[T]o be consistent with the purpose of the School Code the words ["removed" or "dismissed"] must encompass *any* reduction in the extent of employment. The tenure provisions of the School Code were intended to protect experienced and veteran teachers against capricious, fickle and irregular exploits of school boards.... And limiting the application of 'removed' or 'dismissed' to instances of complete termination would—as a practical matter—totally obliterate the protection intended by the statute. If this were the case, a board could merely nibble away and reduce one's employment until economic necessity forced the tenured teacher to resign. Such interpretation cannot be sanctioned.'" [Emphasis in original.]

Construing the statute "with a view to effecting its objects and to promoting justice", § 1–02–01, N.D.C.C., we hold that the term "dismissed", as used in § 20.1–02–22, N.D.C.C., encompasses a "suspension" ordered by the Game and Fish Hearing Board for purposes of allowing an aggrieved individual to appeal to the district court.[3]

---

**3.** Other courts have also rejected a strict construction of the term "dismissed" in similar contexts. *See, e.g., Reynolds v. State Board of Equalization,* 29 Cal.2d 137, 140, 173 P.2d 551, 553 (1946) (statutes authorizing dismissal include lesser penalty of suspension); *Nichols v. Sunderland,* 77 Cal.App. 627, 633, 247 P. 614, 618 (1926) ("dismissal" includes temporary deprivation from office); *Goldsmith v. Board of Education,* 66 Cal.App. 157, 164, 225 P. 783,

It follows that the district court acquired jurisdiction to hear Brashears's appeal and, therefore, the judgment of the district court is properly before us for review.

## II

■ We next determine whether or not the North Dakota Game and Fish Hearing Board had authority to suspend Brashears without pay from August 11 to October 20, 1981.[4] The district court found that upon the commencement of removal proceedings only the Governor can suspend the accused person without pay, pursuant to § 20.1–02–21, N.D.C.C., and that the Governor's attempt to make the October 20, 1981, order for suspension without pay retroactive was null and void. The court then ordered that Brashears was entitled to receive his pay from August 11, 1981—which is the date the removal procedure was commenced—through October 20, 1981, which is the date the Governor suspended him without pay.

The district court based its decision on its interpretation of § 20.1–02–21, N.D.C.C., which provides:

"*20.1–02–21. Suspension pending hearing.*—When the governor orders a hearing, he may, at his discretion, suspend the accused individual pending the final determination of the hearing board. If the charges are dismissed, the suspended individual shall be reinstated without loss of salary during the period of suspension."

From this statute the district court concluded, and Brashears urges, that the Governor held exclusive authority to order suspension from August 17 (which is the date the Governor determined that the verified charges constituted grounds for removal) through November 19, 1981 (which is the date the Board issued its order); that he failed to exercise his exclusive statutory authority, which could not be retroactively applied; and, therefore, that the Hearing Board was without authority to order retroactive suspension and thereby intrude upon the Governor's exclusive authority.

We do not agree. Brashears's argument, in effect, ignores the provisions of § 20.1–02–20, N.D.C.C., which sets forth the authority of the Hearing Board and provides:

"*20.1–02–20. Time of hearing—Notice of hearing and of determination.*—The hearing specified in section 20.1–02–19 shall be held within sixty days of the filing of the charges. Not less than fifteen days before the time set for the hearing, notice thereof, signed by the governor, together with a copy of the written charges, shall be served upon the individual accused, by personal service if his whereabouts are known, within the state of North Dakota, otherwise by publication in the manner provided by law for the service of summons in a civil action. *The hearing board shall have authority to hear such charge or charges and make an appropriate order.* This order shall be filed with the governor. An order of removal shall be served upon the individual removed either in person or by registered or certified mail within ten days after its issuance." [Emphasis added.]

A perusal of the two statutes makes it clear that § 20.1–02–21, N.D.C.C., addresses

786 (1924) ("dismiss" includes either permanent or temporary dismissal); *Newman v. Board of Education of Bluffs Community Unit School District No. 2 of Scott County, Illinois,* 98 Ill.App.3d 976, 979–980, 54 Ill.Dec. 428, 431, 424 N.E.2d 1331, 1334 (1981) (any reduction in employment encompasses "dismissed"); *Black v. School Committee of Malden,* 365 Mass. 197, 204, 310 N.E.2d 330, 336 (1974) (one need not be totally banished from school system to be "dismissed"); *Hendrickson v. Civil Service Commission of Washington County Fire District No. 1,* 275 Or. 127, 130, 550 P.2d 432, 434

(1976) ("dismissal" encompasses "dismissed, demoted, suspended"); *Klatt v. Guaranteed Bond Company,* 213 Wis. 12, 24, 250 N.W. 825, 830 (1933) (power to terminate includes power to suspend).

4. Brashears does not contest the findings of the Hearing Board. He also does not contest the validity of his suspension dating from August 4 to August 11, 1981, and from October 20 to November 30, 1981. Thus, we are only concerned with the period of suspension dating from August 11 to October 20, 1981.

only the Governor's authority to order pre-decision suspension, while § 20.1–02–20, N.D.C.C., addresses the Hearing Board's authority to issue the final dispositional order. Assuming, without deciding, that § 20.1–02–21 limits the Governor's actions in the manner suggested by Brashears, none of those restrictions are found in § 20.1–02–20, which relates to the authority of the Hearing Board. Rather, § 20.1–02–20 allows the Hearing Board, after hearing the charges, to make an "appropriate order".

In the instant case, the Hearing Board ordered that Brashears be suspended without pay for 118 days, beginning August 4 and ending November 30, 1981. The Hearing Board had determined that this suspension constituted an "appropriate order" under the circumstances because the charges brought against Brashears mandated that disciplinary action be taken. Thus, we are not faced with a question of retroactive application of suspension as Brashears has argued. Rather, Brashears was already suspended without pay and the Board's order simply constituted a recognition that there had been a predecision suspension with no pay.[5] We cannot conclude that the Board's order was inappropriate under the circumstances. To so hold would amount to giving Brashears the benefit of a ten-week vacation with pay. Certainly such a result was not contemplated by the drafters of Chapter 20.1–02, N.D.C.C. (S.L.1973, ch. 202). We therefore conclude that the Game and Fish Hearing Board did have authority to suspend Brashears without pay from August 11 to October 20, 1981.

Based on the foregoing, we affirm the portion of the district court's judgment finding that the court had jurisdiction to hear Brashears's appeal and we reverse the portion of the district court's judgment con-cluding that the North Dakota Game and Fish Hearing Board had no authority to suspend Brashears without pay from August 11 to October 20, 1981.

ERICKSTAD, C.J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

When the Commissioner institutes removal proceedings against an employee by filing verified, written charges with the Governor, the Game and Fish Hearing Board, established by § 4, Chapter 198, S.L.1959 (now § 20.1–02–19, NDCC), acquires, pursuant to specific statutory language, the power by "appropriate order" to (1) remove the employee, or (2) dismiss the charges. See §§ 5 and 6, Chapter 198, S.L.1959 (now §§ 20.1–02–20 and 20.1–02–21, NDCC). No other disciplinary authority is granted to that Board.

Obviously, the Commissioner has disciplinary authority over Game and Fish Department employees but, because of § 8–2–1, North Dakota Personnel Policies, he may suspend for misconduct, without pay, only for a period not to exceed 30 calendar days and, because of Chapter 198, S.L.1959, he may not fire those employees for any reason.

Pursuant to the provisions of § 6, Chapter 198, S.L.1959 (now § 20.1–02–21, NDCC), the Governor may suspend an accused employee pending the Board's determination, but if the Board does not remove that accused employee, that employee is reinstated without loss of salary during that suspension.

The proceeding involving Brashears should be remanded to the Game and Fish

---

**5.** The Board was aware that Brashears was neither working nor receiving compensation during this period of time. The Hearing Board's Finding of Fact No. X states:

"That on August 4, 1981, Sidney Brashears was suspended from duty without pay by the North Dakota Game and Fish Department pending a removal hearing. That on October 20, 1981, Notice of Suspension was signed by the Governor ratifying the Game and Fish Department's suspension and ordering that the suspension without pay status continue until a final determination by the Hearing Board."

Hearing Board for disposition consistent with the law. If the law is too restrictive, the remedy lies with the Legislative Assembly. The law is not ambiguous but was clearly meant to only provide Game and Fish Department employees some protection from indiscriminate firing. Trying to use it for other purposes obviously creates unanswerable questions, such as whether or not there is a right to appeal from an inappropriately issued order.

As I understand the arguments made by counsel for both parties, neither agrees with my interpretation. For that reason I do not criticize the results reached by Justice Paulson.