KLATT, Respondent, vs. GUARANTEED BOND COMPANY, Defendant, and COLUMBIA CASUALTY COMPANY and another, Appellants.

*October 10—November 7, 1933.*

14

For the appellant Columbia Casualty Company there was a brief by *Lamfrom, Tighe, Engelhard & Peck* of Milwaukee, and oral argument by *Egon W. Peck.*

For the appellant Maryland Casualty Company there were briefs by *James E. Coleman,* attorney, and *John S. Barry* of counsel, both of Milwaukee, and oral argument by *Mr. Barry.*

*C. A. Markham* of Beaver Dam, for the respondent.

OWEN, J.  This action is brought by the plaintiff against the several defendants to recover amounts paid by the plaintiff to the Guaranteed Bond Company as the purchase price of bonds sold by the Guaranteed Bond Company to the plaintiff in advance of their classification as Class A securities.  The defendant Guaranteed Bond Company, during all the times herein material, was a duly licensed securities broker doing business in the city of Milwaukee.  Our securities (sometimes termed "blue sky") law requires securities offered for sale to be classified as Class A or Class B, and prohibits the sale of securities until so classified, and a permit for their sale issued, by the Public Service Commission, except as provided by sec. 189.08, Stats.  That section reads:

"Any person authorized by the commission to act as a broker, who desires to sell any Class A security before securing a permit, may do so after complying with the following conditions: (1) Such broker shall notify the commission in writing of the name or description of such security, and shall, within thirty days or within such further time as the commission may fix, apply for a permit for the sale thereof as Class A security.  (2) He shall also file with the commission a bond executed by a licensed surety company, in the sum of twenty thousand dollars conditioned

to repay to any purchaser of such securities on demand any money or the value, in money, of any other consideration received of him therefor if said application shall not be made as above provided, or the commission shall determine that the securities so offered are not Class A securities, either by refusal to issue a permit for the sale thereof or by issuance of a permit authorizing the sale thereof as Class B securities, or otherwise, and to pay to the commission the fees required by section 189.26.''

There is some reason for believing that this section requires the filing of a bond with the Public Service·Commission for each security which is proposed to be sold as a Class A security before it is so classified and a permit to sell the same issued. However, the statute seems to have been construed by the commission from the beginning as to require only the filing of a blanket bond in the sum of $20,000 and, under such blanket bond, the broker may proceed with the sale of any number of securities upon merely notifying the commission of an intention to do so. In view of this practical construction of the law on the part of the administrative agency charged with its enforcement for such a long length of time, apparently acquiesced in by brokers and all others affected by the law, we are not disposed to challenge that construction at this time, as it cannot be foreseen what disturbance would result in the event of a departure therefrom to the rights of those who have acted in reliance upon such construction.

Pursuant to such construction the Guaranteed Bond Company filed its bond, Columbia Casualty Company, surety, with the Public Service Commission on February 4, 1925, as required by sec. 189.08, but at that time known as sec. 183.27 (4). On August 17, 1925, the Guaranteed Bond Company filed with the commission a notice of its intention to offer for sale as Class A securities, subject to such surety bond, Kankakee Hotel six and one-half per cent. first-mort-

gage bonds, insured by London & Lancashire Indemnity Company, and in said notice it advised the commission that the application for the permit would be filed by Bristol & Company, underwriters of the bonds, on its behalf. On August 27, 1925, the then Railroad Commission suspended the right of the Guaranteed Bond Company to sell securities in advance of the issuance of the permit under the surety bond which the Guaranteed Bond Company then had on file with the commission. The reason for this appears to have been that the Guaranteed Bond Company had sold Class A securities to the amount of $55,000 in advance of their qualification and permitted sale. On September 16, 1925, the Guaranteed Bond Company filed a new bond executed by the defendant Maryland Casualty Company under the provisions of sec. 189.08, Stats., together with a collateral agreement executed by Bristol & Company, underwriters of the Kankakee Hotel bonds, which collateral agreement undertook to repay to any purchaser of any securities underwritten by it and sold in Wisconsin by Guaranteed Bond Company as Class A securities, before permit for the sale thereof was issued, any moneys paid for said securities if the permit was not obtained. The Maryland Casualty Company bond was approved by the commission on September 17th, and the Guaranteed Bond Company was so advised by letter dated September 18, 1925. The Guaranteed Bond Company was further advised that it was "at liberty to proceed in offering Class A securities prior to the issuance of the permit under conditions prescribed by statute." Thereafter, and on the 22d day of September, 1925, the Guaranteed Bond Company filed a second notice with the commission that it intended to sell as Class A securities, before the issuance of a permit, "Kankakee Hotel 6½ first-mortgage bonds," and that "application has been filed by the undersigned or by Bristol & Company, Chicago, on its behalf."

On October 21, 1925, the commission advised Bristol & Company that, pursuant to its request, the time for filing the application for permit was extended to November 20, 1925. On November 19, 1925, Bristol & Company duly filed the application for the permit with the commission. On February 17, 1926, the commission denied said application for the permit, whereupon Bristol & Company appealed from said order to the circuit court for Dane county, Wisconsin. On July 19, 1926, the circuit court for Dane county vacated and set aside said order of the commission and ordered that the permit be issued, unless it be denied for reasons other than those forming the basis of the order of the commission of February 17, 1926. Subsequently the commission filed a notice of appeal from said order of the circuit court to this court, but the record was never transmitted to this court, nor was it remanded to the commission. The matter was never heard by this court nor did the commission ever take further action.

As the effect of this decision of the circuit court upon the order of the then Railroad Commission is a point involved and discussed in the briefs, we may as well dispose of it here. The contention on the part of the appellants is, that the order of the circuit court was tantamount to a judicial determination that the Kankakee Hotel bonds were in fact Class A securities. It appears that the reason given for denying the permit was that the Kankakee Hotel bonds were insured by "United Lloyds of America," an insurance company not authorized to transact business in this state. The circuit court held in effect that the contract of guaranty of the bonds was not a Wisconsin contract, and that it was not necessary that the company be authorized to do business in this state in order to make its guaranty a valid one. We are unable to find in the record the order of the Railroad Commission denying the permit nor any copy thereof. Although the complaint in the circuit court action, which is

in the record, states that a copy of the order is attached to the complaint as "Exhibit A," we do not find it anywhere in the record. Our statement of the reasons given by the commission for denying the permit is gathered from desultory statements gleaned from other documents relating to that circuit court action which were introduced in evidence. However, we do not think it makes much difference. The fact remains that the commission never classified the Hotel Kankakee bonds as Class A securities, neither did the circuit court order the commission so to do. The adjudication of the circuit court was only to the effect that the reason given by the commission for failure to so classify them was not a valid reason, and ordered the commission to classify them as Class A securities unless such classification be denied on some other ground. It must be held, notwithstanding the adjudication of the circuit court, or what effect the unperfected appeal had on such adjudication, that the Hotel Kankakee bonds have never been classified as Class A securities and that no permit has ever been issued for their sale in this state as Class A securities. After such lapse of time they must be treated as securities which failed to qualify as Class A securities.

The complaint in this action alleges that on the 17th day of September, 1925, the plaintiff purchased from the Guaranteed Bond Company, Hotel Kankakee bonds to the amount of $4,000. At the conclusion of the trial plaintiff moved to amend his complaint so as to allege that the first purchase was on and between the 21st day of August and the 26th day of August, 1925. The court permitted this amendment, found that the first purchase was made between August 21 and August 26, 1925, and rendered judgment against the Columbia Casualty Company on its bond, which was then in force. The Columbia Casualty Company contends that Klatt did not become a purchaser of this block of bonds until after the commission had terminated the

right of the Guaranteed Bond Company to make sales on the 27th day of August, 1925. Under this contention we are required to consider the course of the various transactions by which Klatt eventually became vested with the title to these bonds.

The evidence shows that Granville Lyon, acting for the Guaranteed Bond Company, called on Mr. Klatt for the purpose of selling to him some of the Hotel Kankakee bonds about the 21st day of August, 1925. No contract was consummated on that date, and he went back to Klatt on the 25th or 26th day of August. Klatt had some Brazilian bonds of the par value of two thousand pounds. Upon the occasion of the latter visit, Klatt gave Lyon an oral order for Hotel Kankakee bonds to the amount of $4,000, and turned over to him the Brazilian bonds for the purpose of sale at the best price he could get, the proceeds thereof to be applied as far as necessary in payment of the Hotel Kankakee bonds so ordered. The Brazilian bonds were retained by the Guaranteed Bond Company for several days in an effort to obtain the best price possible. They were finally sold about the 17th day of September for $4,900. On that date $4,000 of the proceeds were applied on Klatt's purchase of the Hotel Kankakee bonds and the remainder remitted to him by check. The interim certificates for the Hotel Kankakee bonds were delivered about the 24th or 25th day of September, after the bond of the Maryland Casualty Company had been approved by the commission. The judgment against the Columbia Casualty Company for the amount of this $4,000 rests upon the validity of the conclusion that a sale was consummated on the 25th or 26th day of August, when the order was given by Klatt for the bonds and the Brazilian bonds turned over to the Guaranteed Bond Company with the understanding that the proceeds of their sale would be applied upon the purchase price of the Hotel Kankakee bonds so far as necessary.

It was determined in *Josslyn v. Dahinden-Schmitz Co.* 208 Wis. 468, 243 N. W. 473, that an exactly similar transaction constituted a sale. While we are satisfied with that conclusion, we think that the reasons there given for that conclusion need a re-examination and restatement. The conclusion there reached was rested upon the definition of a "sale" contained in sec. 189.02 (5), Stats., which reads:

" 'Sale' or 'sell' includes every disposition, offer, negotiation, agreement or attempt to dispose of a security or interest in a security for value, and every solicitation of a subscription or order for the purchase and every exchange for property."

It is to be noted that the statute does not attempt to define a "purchaser." The bond required by sec. 189.08 is conditioned "to repay to any purchaser of such securities." There can be nothing more manifest than that a mere offer to sell does not in and of itself give rise to a purchaser. In order to have a sale there must be a purchaser, and the word "sale," as defined in the statute, is altogether out of harmony with the idea that every sale as defined by the statute gives rise to a purchaser. There can be no doubt that the definition given to the word "sale" in the statute is to be limited to the penalties provided by that statute, visited on those who not only consummated a sale as known and understood in the law, but who entered into any negotiations for the purpose of promoting or consummating such a sale. While we regard as sound the conclusion in the *Josslyn Case* that the negotiations there considered constituted a sale, the conclusion must be buttressed by considerations quite aside from the definition contained in sec. 189.02 (5).

In this case Klatt gave an oral order for these bonds. He not only did that, but he turned over in payment thereof certain Brazilian bonds with the understanding that the Guaranteed Bond Company was to make sale of those bonds

and apply the proceeds thereof so far as necessary in payment of the Hotel Kankakee bonds so ordered. Now whether or not this transaction resulted in a contract of purchase and sale, it did result in some contract of a binding nature. If it fell short of being a contract of purchase and sale, it was at least a contract by which Klatt agreed to purchase and the Guaranteed Bond Company agreed to sell a certain number of Hotel Kankakee bonds. When we consider that the entire purpose of the so-called "Blue Sky Law" is to protect the investors of this state and to restrain the flotation and sale of improvident securities, it is apparent that the law should receive liberal construction for the purpose of carrying out that very manifest legislative intent. We think that when an investor orally orders a given amount of securities and turns over to the broker who is selling such securities either money in payment thereof or property to be sold by the broker and the proceeds applied to the payment of the purchase price of the securities ordered, it should be considered as a contract of purchase and sale for all intents and purposes of the so-called "Blue Sky Law." It is certainly a contract from which neither party is entitled to withdraw. If either fails to carry out the obligations assumed, he is guilty of a breach of the contract and subjects himself to damages therefor. We therefore hold that Klatt became a purchaser of the bonds prior to the time when the commission suspended the right of the Guaranteed Bond Company to operate under the Columbia Casualty Company bond, and that the judgment against the Columbia Casualty Company cannot for this reason be disturbed.

It is further argued by the Columbia Casualty Company that no sales made pursuant to the notice filed with the commission on August 17, 1925, of the intention of the Guaranteed Bond Company to proceed with the sale of Hotel Kankakee bonds, constituted legal sales because of the fact

that the bonds were described as being insured by London & Lancashire Indemnity Company, whereas as a matter of fact they were insured by another company. All that the statute, sec. 189.08, requires of this notice is, that it shall notify the commission of the name or description of the security which is proposed to be sold under the provisions of that section. The notice is sufficient if it merely names the security. It is not necessary to the validity of the notice that it punctiliously describe the security in every detail. It is sufficient notice if it enables the commission to identify the security proposed to be sold. There is no suggestion in this case that the commission was in any way misled with reference to the security which was proposed to be sold, and we do not consider the contention made as worthy of extended treatment.

Another contention made by the Columbia Casualty Company is, that the action is barred by the statute of limitations set up in sec. 189.22, Stats., relating to actions therein provided for the recovery for illegal sales. As already determined, this is not an action to recover for illegal sales, and the conditions subsequent, and the other limitations, with reference to such actions, prescribed in sec. 189.22, do not apply. This action is based on a statutory agreement by the broker that he will repay to the purchasers of such securities all moneys paid therefor in the event that they are not classified as Class A securities. That statutory promise is the fundamental basis of the action, and the signers of the bond are liable because they guaranteed the faithful performance of that fundamental promise. There is no condition precedent to the commencement of such an action, neither is there any special statute of limitations applicable thereto.

We do not have presented here the question of whether the Maryland Casualty Company would also be liable upon its bond which was in force at the time of the delivery of

the interim certificates which finally culminated the transaction. As already stated, the judgment upon this feature of the case is against the Columbia Casualty Company alone. The plaintiff has not appealed from that judgment. While the case of *Josslyn v. Dahinden-Schmitz Co.* 208 Wis. 468, 243 N. W. 473, justifies the conclusion that no liability arises under these statutory bonds by reason of the delivery of the securities pursuant to some prior arrangement, we think that question merits further consideration, and should be considered as an open question notwithstanding the decision in the *Josslyn Case*. This is not to be considered as an overruling of the *Josslyn Case* but merely as an intimation that the ruling in that case in such respect seems somewhat doubtful.

This disposes of all issues raised with reference to the $4,000 of bonds first purchased by Klatt. Klatt purchased a second block of these bonds on October 3, 1925. Judgment went against both surety companies upon this block of bonds. Although these bonds were purchased after the right of the Guaranteed Bond Company to proceed under the Columbia Casualty Company bond was suspended, and after the bond of the Maryland Casualty Company was filed and approved, the continuing liability of the Columbia Casualty Company for sales made after those events is challenged by the Columbia Casualty Company. We conclude that the suspension of August 27th terminated any further liability on the Columbia Casualty Company bond. Under the construction given by the commission to the statute providing for the sale of Class A securities in advance of their classification as such, a broker may proceed to sell under a blanket bond. Sec. 189.08, Stats., provides that the commission shall have authority, for cause, to terminate any broker's right to proceed under the provisions of that section. It appears that at the time of the suspension order the broker had already floated $55,000 of claimed Class A secu-

rities in advance of their classification as such. The commission well might have felt that it could not longer permit the broker to proceed floating such securities under its $20,000 bond. Its termination of such right under the circumstances was very natural and certainly abundantly justified.

It is said that the commission had no right to suspend the right of the broker to sell the bonds. It had the power to terminate the right under the express provisions of sec. 189.08, Stats. The power to suspend is certainly included in the power to terminate. The only reason it had for suspending was that the security on file with the commission was not· sufficient to protect the public interest and justify any further activity on the part of the broker in that field. As soon as the broker filed an additional bond the public interest was protected and it was notified that it might proceed. Under such circumstances, the only reasonable construction to be placed upon the action of the commission was that it would permit no further sales which were to be protected by the Columbia Casualty Company bond, and that it was intended to limit the Columbia Casualty Company bond to such liabilities as had already been incurred. The exercise of such power became necessary to protect the public, in view of the construction authorizing sales under the blanket bond. It is perfectly apparent that a $20,000 bond may not be sufficient to afford protection to the purchasers who are offered for sale Class A securities by active brokers. Very broad powers are given to the commission in the administration of this law. Having recognized that a blanket bond is sufficient to authorize the sale of securities in advance of their classification, it is quite necessary that a check be also recognized somewhere upon the extent to which such security may be floated under a $20,000 bond. That check is to be found in the express power of the commission to terminate the right of the broker to proceed, which includes the

lesser right to suspend. We hold that the Columbia Casualty Company incurred no liability resulting from the sale of such securities by the Guaranteed Bond Company after the notice of August 27th. The judgment against the Columbia Casualty Company on the second sale of the Klatt bonds was erroneous.

It is further contended on the part of the Maryland Casualty Company that the Guaranteed Bond Company having once filed notice with the commission that it would proceed with the sale of the Hotel Kankakee bonds as Class A securities, and its authority so to do having been suspended, it could not again file a similar notice after it had re-established itself in its standing with the commission by the filing of another bond. We do not think there is anything to this contention. Broad powers are conferred upon the commission with reference to the administration of this law, and, when in the opinion of the commission the public interest requires the cessation of such activities on the part of brokers, it has ample power to restrain them or suspend them or to terminate them. When the broker has filed new security, so that in the opinion of the commission the public interest will not be jeopardized by the resumption of such activities, we see no reason why the provisions of sec. 189.08, Stats., may not apply to the new status thus created, a resumption of the sale of such securities permitted, and that such resumption should take the form of a new notice of intention to sell under the new security.

*By the Court.*—Upon the appeal of the Maryland Casualty Company the judgment is affirmed. Upon the appeal of the Columbia Casualty Company the judgment is affirmed with reference to the so-called first block of bonds and reversed with reference to the second block of bonds, with directions to enter judgment so far as that block of bonds is involved against the Guaranteed Bond Company and the Maryland Casualty Company.