STATE of Wisconsin, Plaintiff-Respondent,

v.

Kevin F. McGuire, Defendant-Appellant.†

Court of Appeals

*No. 2005AP2832–CR. Submitted on briefs January 25, 2007.
—Decided May 2, 2007.*

**2007 WI App 139**

(Also reported in 735 N.W.2d 555.)

† Petition to review filed.

690

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy A. Provis* of Port Washington.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,* attorney general, and *Mark A. Neuser*, assistant attorney general.

An amicus curiae brief was filed by *David A. Cohen, Randall E. Schumann,* and *Leslie M. Van Buskirk,* of

Madison, on behalf of the Wisconsin Department of Financial Institutions, Division of Securities.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J. This case examines whether a promissory note issued to a sole investor is a "security" within the meaning of Wis. Stat. § 551.02(13) (2005–06).[1] Kevin F. McGuire appeals a judgment convicting him of fraud in connection with the sale of securities, contrary to Wis. Stat. § 551.41(2). Without revealing pertinent information regarding his financial and criminal history, McGuire gave his paramour a promissory note promising to repay with interest money she lent him for his auto racing venture. While this scenario may be at the periphery of what the legislature intended when it enacted Wis. Stat. ch. 551, we hold that it nonetheless falls within that remedial statute's broad scope. We affirm the judgment of conviction.

¶ 2. The following testimony was given at the trial to the court. Laura DeLuisa met McGuire in January 2001. He told her that he was involved in a NASCAR-related venture and showed her pictures of six or seven race cars that he said he owned.[2] He asked DeLuisa whether she would want to display any of the cars at her husband's restaurant. DeLuisa mentioned to McGuire that she was awaiting a personal injury settlement. Thereafter, McGuire telephoned her often, sometimes twice a day, to ask if she would loan him money for his NASCAR-related expenditures.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] In reality, McGuire owned two race cars. NASCAR is an acronym for National Association for Stock Car Auto Racing.

¶ 3. About two days after DeLuisa received her settlement, she began writing checks to people associated with McGuire's NASCAR venture. These included numerous checks between May 8 and May 11, 2001, in amounts between $2500 and $35,000 for purchasing race cars, a trailer and tires, and for repairs. DeLuisa made the checks out to the various vendors, not to McGuire. DeLuisa understood from McGuire that the money was for establishing his NASCAR venture and that, because NASCAR was "up and coming," it would be a good investment. McGuire assured her that as dealerships paid him for showing his race cars, he would repay her, and repeatedly told her she would realize a profit. By the time DeLuisa made her first loan to McGuire their acquaintance had evolved into a romantic relationship. At this point, the only terms were that McGuire would repay the money he borrowed from her.

¶ 4. Eventually, DeLuisa's payments on McGuire's behalf reached $140,000. On July 1, 2001, McGuire signed a promissory note at DeLuisa's lawyer's office by which McGuire agreed to repay DeLuisa $140,000 plus ten percent interest on the unpaid balance amortized over four years. The note provided that, in the event of untimely payments or default, all interest and any amount still owed would become immediately due and payable.

¶ 5. McGuire soon stopped making payments[3] and DeLuisa filed a complaint with the Wisconsin Department of Financial Institutions, Division of Securities (DFI), to the effect that McGuire may have

---

[3] DeLuisa first testified that McGuire made three payments totaling about $8500, and later testified he may have made more than three payments totaling $27,250.

defrauded her. Mark Dorman, a DFI securities examiner who investigates possible violations of Wis. Stat. ch. 551, was assigned to investigate the complaint and testified for the State in this case. Based on his initial conversation with DeLuisa, Dorman concluded "there were indications her transactions with McGuire likely involved some type of fraud." Dorman also learned that McGuire had filed for bankruptcy in 1998 and that he had a 1990 felony conviction for larceny for which he had served time in prison. McGuire's Chapter 13 bankruptcy file was active at the time of his dealings with DeLuisa. The bankruptcy plan, which would not expire until 2003, forbade McGuire from incurring debt in excess of $1000 without first informing and receiving permission from the bankruptcy court.

¶ 6. The testimony of DeLuisa and McGuire conflict as to whether McGuire told DeLuisa his recent divorce left him with financial or credit problems. However, it is undisputed McGuire never told DeLuisa about the bankruptcy, the conviction, or the prison term. Leslie Van Buskirk, a staff attorney in DFI's Bureau of Registration Enforcement, also reviewed DeLuisa's file. In her opinion, this was "kind of a classic situation" in which a security was formed.

¶ 7. The trial court found McGuire guilty, sentenced him to seven years' probation with one year of conditional jail time, and ordered him pay DeLuisa $112,750 in restitution. McGuire appeals.

## DISCUSSION

■

¶ 8. McGuire's silence regarding his felony conviction and bankruptcy formed the basis for his conviction

of securities fraud under Wis. Stat. § 551.41(2). This statute provides in relevant part:[4]

> **551.41 Sales and purchases.** It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:
>
> . . . .
>
> **(2)** To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . .

The issue on appeal is whether the promissory note McGuire signed is a "security" within the meaning of Wis. Stat. § 551.02(13)(a). This question is one of statutory interpretation, presenting a question of law that we review de novo. *State v. Johnson*, 2002 WI App 224, ¶ 9, 257 Wis. 2d 736, 652 N.W.2d 642.

¶ 9. We begin with the language of Wis. Stat. § 551.02, which states:

> **551.02 Definitions.** In this chapter, *unless the context otherwise requires:*
>
> . . . .
>
> **(13)**(a) *"Security" means any* stock; treasury stock; *note;* bond; debenture; evidence of indebtedness; share of beneficial interest in a business trust; certificate of interest or participation in any profit sharing agreement; collateral trust certificate; preorganization subscription; transferable share; investment contract; commodity futures contract; voting trust certificate;

---

[4] Statutes regulating the sale of securities are sometimes referred to as "blue sky laws." *See Klatt v. Guaranteed Bond Co.*, 213 Wis. 12, 14, 250 N.W.2d 825 (1933).

certificate of deposit for a security; limited partnership interest; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; or, in general, *any interest or instrument commonly known as or having the incidents of a security or offered in the manner in which securities are offered;* or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of or option, warrant or right to subscribe to or purchase or sell, any of the foregoing. (Emphasis added.)

¶ 10. This language is similar to the definition of "security" in the federal Securities Act of 1933 and Securities Exchange Act of 1934. *See* 15 U.S.C.A. §§ 77a, 77b(a)(1), 78a, and 78c(a)(10) (1997). On its face, WIS. STAT. § 551.02(13)(a) states that a promissory note is a security because "[s]ecurity means any . . . note." *Id.* But this language is not as absolute as it facially appears. In *Reves v. Ernst & Young*, 494 U.S. 56, 63 (1990), the United States Supreme Court held that the phrase " 'any note' should not be interpreted to mean literally 'any note,' " but "must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts." *Id.* In that light, the Supreme Court held that the statutory language establishes a presumption that every note is a security. *Id.* at 67. However, this presumption may be rebutted by showing that the note falls within or closely resembles the "family" of instruments deemed not to be securities.[5] *Id.* at 65, 67.

---

[5] *Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990), enumerates several examples of judicially created nonsecurity notes: (1) notes delivered in consumer financing, (2) notes secured by a home mortgage, (3) short-term notes secured by a lien on a small business or some of its assets, (4) notes evidencing a

¶ 11. "Family resemblance" is determined by examining four factors: (1) the motivations of a reasonable seller and buyer; (2) the note's "plan of distribution"; (3) the reasonable expectations of the investing public; and (4) whether other risk-reducing factors exist, making unnecessary the application of the securities laws to protect the public. *Id.* at 66–67. If the challenged instrument does not sufficiently resemble an item on the list such that it can be said to fall into one of the enumerated categories, a court may reexamine the four factors to determine whether a new category should be added to the list. *See id.* at 67.

¶ 12. Because the entire purpose of "blue sky" laws is to protect investors, the law must be liberally construed to carry out that plain legislative intent. *Klatt v. Guaranteed Bond Co.*, 213 Wis. 12, 21, 250 N.W. 825 (1933) (construing Wis. Stat. § 189.02, the predecessor to Wis. Stat. § 551.02). *See also Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972) (stating that securities legislation is meant to be flexibly construed to accomplish its remedial purpose). We must coordinate the interpretation and administration of Wis. Stat. ch. 551, the Wisconsin Uniform Securities Law, with related federal regulations. Wis. Stat. §§ 551.01, 551.67. Also, we find instructive case

character loan to a bank customer, (5) short-term notes secured by an assignment of accounts receivable, (6) notes simply formalizing an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized), and (7) notes evidencing a loan made by a commercial bank to finance current operations. This list is "capable of expansion." *Id.* at 66. McGuire does not argue that his promissory note to DeLuisa falls within this listing.

law interpreting federal securities legislation and accompanying regulations and case law from other jurisdictions that have enacted the Uniform Securities Act. *Fore Way Express, Inc. v. Bast*, 178 Wis. 2d 693, 703, 505 N.W.2d 408 (Ct. App. 1993).

¶ 13. Wisconsin has adopted the *Reves* "family resemblance" test as the proper framework for analyzing whether a note is a security. *Johnson*, 257 Wis. 2d 736, ¶ 15. However, as the amicus curiae brief of the DFI points out, we must be cautious about endorsing *Reves* wholesale without carefully examining the list of *Reves* "nonsecurities" vis-à-vis the Wis. Stat. ch. 551 definitions.[6] As we have stated, the language of the Wisconsin and federal legislation are largely similar, but ch. 551 at least impliedly casts a wider net. Whereas under *Reves* a note may be said to be a *nonsecurity*, that is not necessarily the case under Wisconsin law. Wisconsin Stat. § 551.02(13)(b) specifically enumerates the instruments not embraced by the term "security."[7] Be-

---

[6] Following receipt of the amicus curiae brief, McGuire complained by motion that we had not notified the parties in advance that we had solicited amicus curiae assistance in this case. McGuire contended that such advance notice was required under Wis. Stat. § 809.19(7) and cautioned us to abide by this rule in the future. In our response order of November 20, 2006, we explained to McGuire why such advance notice was not required under the rule. We additionally invited McGuire to seek an amicus curiae party that might support his position. However, we have not received any request by any such entity to participate in this appeal. Finally, our order granted McGuire's request to file a response brief to the amicus curiae brief, and he has done so.

[7] Wisconsin Stat. § 551.02(13)(b) provides:

"Security" does not include any fixed or variable insurance or endowment policy or annuity contract under which an insurer promises to pay money either in a lump sum or periodically for life

yond that, however, WIS. STAT. §§ 551.22 and 551.23 list "exempt" securities and transactions.

¶ 14. For example, unlike *Reves*, in Wisconsin a note secured by a home mortgage or certain short-term notes relating to current transactions remain securities, but are *exempt* from registration under WIS. STAT. § 551.23(5) and WIS. STAT. § 551.22(9), respectively. Securities legislation "carefully exempts from its application certain types of securities and transactions where there is no practical need for its application or where the benefits are too remote." *SEC v. Continental Tobacco Co. of S.C., Inc.*, 463 F.2d 137, 155 (5th Cir. 1972) (citation omitted). The DFI asserts that Wisconsin's statutory scheme reflects a policy choice to include virtually all investment vehicles as securities and then to exempt certain of them only from registration requirements if they are deemed to contain sufficient safeguards for investor protection. This broader approach eliminates only the registration requirement while preserving antifraud jurisdiction over exempt securities or transactions.

¶ 15. We believe DFI's approach has merit. Nevertheless, we are mindful that this approach was not

---

or some other specified period; any beneficial interest in any voluntary inter vivos trust not created for the purpose of carrying on any business or solely for the purpose of voting; or any beneficial interest in any testamentary trust; or any member's interest that includes all of the rights set forth in s. 183.0102 (11) in a limited liability company organized under ch. 183 if the aggregate number of members of the limited liability company, after the interest is sold, does not exceed 15, and the articles of organization do not vest management of the limited liability company in one or more managers.

McGuire does not argue, nor could he, that the note he signed promising to repay DeLuisa the $140,000 plus ten percent interest over four years falls within any of these exclusions.

presented to the trial court. Instead, the court and the parties addressed the note in the context of the *Reves* family resemblance test. Therefore, we will examine whether the McGuire note is a security in that light and in light of whether "the context otherwise requires" as provided in Wis. Stat. § 551.02.

¶ 16. We begin with Wis. Stat. § 551.02(13)(a), which establishes the presumption that every note is a security. *See Johnson*, 257 Wis. 2d 736, ¶ 13; *Reves*, 494 U.S. at 65. We next address each *Reves* factor in turn to ascertain whether the note McGuire issued to DeLuisa is closely similar to any of the family resemblance examples, rendering the note a nonsecurity.

### First ***Reves*** Factor: Motivation

¶ 17. The first factor under *Reves* is the motivation of a reasonable seller and buyer. "If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.'" *Reves*, 494 U.S. at 66. If, however, the note "is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose . . . the note is less sensibly described as a 'security.'" *Id.* In the context of notes, "profit" includes interest. *Id.* at 68 n.4.

¶ 18. DeLuisa testified that she invested her money in McGuire's NASCAR venture because it seemed like a good investment which would yield a

handsome profit. McGuire testified he was trying to get back on his financial feet after a costly divorce and, inexplicably as it relates to DeLuisa, a business downturn after September 11, 2001. The trial court found that although DeLuisa may have had more than one reason to give McGuire money, her "primary intent was to make a profit" and McGuire's testimony was "less than credible." McGuire agrees that determinations of witness credibility are the exclusive province of the trial court. *See Johnson v. Merta*, 95 Wis. 2d 141, 151–52, 289 N.W.2d 813 (1980). He argues, however, that the trial court's conclusion that the ten percent interest rate was "far above bank rates" is based on erroneous testimony. In support, he supplies in his Appendix a table of prime rate quotations not part of the appellate record. We cannot consider that extraneous material. *See State v. Kuhn*, 178 Wis. 2d 428, 439, 504 N.W.2d 405 (Ct. App. 1993). The bottom line is that McGuire's motivation was to raise money for his NASCAR venture and DeLuisa's motive was to make a profit. This factor weighs against a family resemblance to a nonsecurity.

*Second **Reves** Factor: Plan of Distribution*

■

¶ 19. The second factor examines whether the instrument was one for which there was common trading for speculation or investment. *Reves*, 494 U.S. at 66. Common trading is sufficiently shown if the instrument is offered and sold to a broad segment of the public. *Id.* at 68. McGuire argues this unique, one-on-one arrangement should not be held to be a security. The State responds that the fact that this transaction

involved only DeLuisa as an investor[8] is not fatal, because a debt instrument may be distributed to but one investor, yet be a security. *See National Bank of Yugoslavia v. Drexel Burnham Lambert, Inc.*, 768 F. Supp. 1010, 1015–16 (S.D.N.Y. 1991). Nonetheless, the State and DFI both essentially concede the weakness of this factor. We agree, and conclude that the narrow "plan of distribution" of this instrument weighs in favor of a "nonsecurity" determination.

### Third **Reves** Factor: Reasonable Expectations of the Investing Public

¶ 20. The third factor is an objective one: would a reasonable investor have considered the transaction to be an investment? *See Reves*, 494 U.S. at 66, 69 (court assesses whether instrument would be considered a "security" in public estimation, even if not in that particular transaction, and whether it would be reasonable for prospective buyer to take seller at its word); *see also SEC v. J.T. Wallenbrock & Assocs.*, 313 F.3d 532, 539 (9th Cir. 2002) (the issue is what a reasonable investor would think, not what the particular individual might have thought). The relevant facts bearing on this factor are the same ones we considered on the first factor, motivation. Here, McGuire convinced De-Luisa that since NASCAR was "up and coming," his venture had a promising future and she would realize a return significantly better than likely could have been achieved at a local bank. A reasonable investor would have considered the transaction with its higher-than-

---

[8] Mark Dorman, the DFI securities examiner, testified that he had documentary evidence of two other women similarly involved in transactions with McGuire. The trial court permitted this testimony only to the extent it explained Dorman's next step in the McGuire-DeLuisa investigation.

commercial interest rate to be an investment. We conclude this factor weighs against a resemblance to the family of non-securities.

*Fourth **Reves** Factor: Other Risk-Reducing Factors*

¶ 21. The last factor examines whether another regulatory scheme exists which, without resort to securities law, adequately protects the public from the risk the instrument poses. *Reves*, 494 U.S. at 67. McGuire contends that WIS. STAT. § 100.18, the Deceptive Trade Practices Act (DTPA), satisfies that need. We disagree, however, because § 100.18 prohibits only affirmative assertions, not a failure to disclose, *see Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 677 N.W.2d 233, whereas omitting information supports a claim under WIS. STAT. § 551.41(2). *See* Wis JI—Criminal 2904 (listing as an element either that the defendant made an untrue statement of material fact or omitted a material fact necessary to make not misleading the statements that were made). Relying on the DTPA would not offer sufficient risk protection because it provides no remedy for omissions of material facts.

¶ 22. There also is no evidence to indicate that the note was covered by any other regulatory scheme to protect DeLuisa. True, the note provided that untimely payments or default could render the entire amount, including interest, immediately due and payable. However, a note's demand feature eliminates risk only if and when payment is made. *See Reves*, 494 U.S. at 69. We conclude this factor also weighs against resemblance to the family of nonsecurities.

¶ 23. On balance, then, the first, third and fourth factors weigh against any resemblance to the family of nonsecurities; only the second factor weighs in favor.

The factors are considered as a whole, and failure to satisfy one of the factors is not dispositive. *J.T. Wallenbrock & Assocs.*, 313 F.3d at 537. McGuire's fraud consisted of his failure to inform DeLuisa of his undischarged bankruptcy, the terms and conditions of the bankruptcy plan which significantly limited McGuire's ability to incur debt, and his felony conviction and prison time for theft by conversion. The trial court found these omissions and McGuire's affirmative statements that this was a good, safe investment to be material facts which would influence a reasonable investor's investing decision. These findings are not clearly erroneous. *See Schnuth v. Harrison*, 44 Wis. 2d 326, 335, 171 N.W.2d 370 (1969).

■■■

¶ 24. We conclude that McGuire's note qualifies as a "security" within the meaning of Wis. Stat. § 551.02 and thus his conduct qualified for prosecution pursuant to Wis. Stat. § 551.41.

■■■

¶ 25. We appreciate that under *Reves* we have the authority to expand on the list of judicially created nonsecurities. We choose not to do so for two reasons. First, we think this exercise is better performed by our legislature. That body has already decreed that certain transactions are not a "security" in Wis. Stat. § 551.02(13)(b). Furthermore, in Wis. Stat. §§ 551.22 and 551.23, that body has exempted certain securities and transactions from the registration requirements of the law, but not from the other provisions of Wis. Stat. ch. 551.

¶ 26. Second, establishing a new category of exempt securities under the facts of this case could lead down the path of the exception swallowing the rule. While the personal relationship between McGuire and

DeLuisa represents a somewhat unusual aspect of this case, we ultimately deem that factor largely collateral to the issue. It remains that DeLuisa and McGuire entered into a not uncommon business transaction whereby DeLuisa loaned McGuire money in the expectation of making a profit. We are hesitant to declare such a transaction beyond the reach of WIS. STAT. ch. 551, particularly in light of the statute's remedial purpose. *See Klatt*, 213 Wis. at 21. Other states which have enacted the Uniform Securities Act have held that a personal promissory note is a "note" within the definition of a "security." *See, e.g., State v. Weisser*, 161 N.W.2d 360, 365 (N.D. 1968), and *State v. Goetz*, 312 N.W.2d 1, 6 (N.D. 1981). We conclude that under the statutory language and its broad remedial aim, this particular note was a security.

### Burden of Proof

¶ 27. The trial court observed that "[a] note is presumed to be a security. It is a rebuttable presumption." McGuire questions whether this presumption "in favor of the State" is constitutional because, he suggests, it impermissibly shifted to him, a criminal defendant, the burden of disproving an element of the crime. We disagree for several reasons.

¶ 28. For McGuire to be convicted of violating WIS. STAT. § 551.41(2), the State had to prove beyond a reasonable doubt that he committed fraud in connection with the offer, sale or purchase of any security. *Id.*; WIS JI—CRIMINAL 2904. It follows that part of the State's burden was to prove that the note was a security. *See State v. Williams*, 581 A.2d 78, 80 (N.H. 1990) (construing N.H. Rev. Stat. Ann. § 421–B:3, the analogous New

Hampshire statute). Indeed, the State's burden of proof was four-fold. It had to prove beyond a reasonable doubt that: (1) the instrument was a security and (2) McGuire willfully (3) made an untrue statement of, or omitted to state a (4) material fact in connection with the sale of the security. *See* WIS JI—CRIMINAL 2904.

¶ 29. McGuire's argument confuses the distinction between the burden of proof and the burden of going forward. WISCONSIN STAT. § 551.02(13)(a) decrees that a note is a security. When the trial court said that there is a presumption that a note is a security, the court was merely speaking the obvious based on the language of the statute. In no sense did the court relieve the State of its burden to show that McGuire sold DeLuisa a note. And the evidence unequivocally shows that such a sale occurred. With the State having established this fact, the question then became whether the context of the case nonetheless indicated that McGuire's note should not be considered a security under the "unless the context otherwise requires" language of the statute. This, of course, was McGuire's theory of defense. As such, the burden of going forward with evidence in support of this defense was properly assigned to McGuire.[9] *See generally State v. Alioto,* 64 Wis. 2d 354, 359, 219 N.W.2d 585 (1974) (discussing burden of proof and burden of going forward in criminal tax fraud context). This was not impermissible burden shifting. To the contrary, it merely pointed up the

_____

[9] Despite that this was McGuire's burden to go forward, we observe that the State's evidence also put forth the "context" of the arrangement between McGuire and DeLuisa.

factual dispute that lay at the heart of the case, and the trier of fact (here the trial court) answered the question.

¶ 30. The presumption created by the statute allows, but does not require, the fact finder to determine the existence of an element of the crime—that is, an ultimate or elemental fact—from the existence of one or more evidentiary or basic facts. *See State v. Gardner*, 2006 WI App 92, ¶ 9, 292 Wis. 2d 682, 715 N.W.2d 720. A permissive presumption generally is constitutional as long as there is a rational connection between the basic fact and the elemental fact. *Id.*, ¶ 10. Granted, the State was aided by the presumption, but at this juncture it was up to McGuire to chip away at the State's case as opposing parties characteristically do.

¶ 31. The trial court here noted the rebuttable presumption but then examined each of the *Reves* factors to "determin[e] *if* the note is a security." (Emphasis added.) The court also considered whether McGuire's omissions were material and whether he acted willfully before concluding that it was satisfied beyond a reasonable doubt that McGuire was guilty as charged. Nothing in the court's comments or analysis conveys any hint that, by virtue of the presumption, the State was relieved of having to prove, or that McGuire had to disprove, any element of the crime. The court's procedure properly reflected the statutory language that a note is a security "unless the context otherwise requires." The State still shouldered the task of proving that the instrument was a note. McGuire did not introduce facts sufficient to establish that the context otherwise required. Accordingly, the presumption was

not successfully rebutted, and the evidence supported a finding of guilt on that element.

¶ 32. Finally, although not given in this case because it was a trial to the court, the securities fraud jury instruction, Wis JI—Criminal 2904, reinforces our conclusion. It addresses the State's burden of proof as follows:

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present.

> **Elements of the Crime That the State Must Prove**

> 1. The item [offered][sold] was a security as defined by Wisconsin law.

> A [insert applicable term from § 551.02(13)] is a security.

> 2. The defendant [made an untrue statement of material fact][omitted to state a material fact necessary to make the statements made not misleading] in connection with the offer, sale or purchase of a security in this state.

> . . . .

> 3. The defendant acted willfully . . . .

*Id.* (footnotes omitted). The first footnote, which follows "A [insert applicable term from § 551.02(13)] is a security," reads:

> 1. Section 551.02(13) provides an extensive definition of "security." If the item involved in the case is alleged to be an item specified in that definition, the Committee recommends that the jury simply be told, for example, that "common stock is a security." It is for the jury to determine whether the item involved in the case is in fact common stock.

710

Some items that are included in the definition of "security" may require further definition. For example, "investment contract" is defined in the Wisconsin Administrative Code § DFI-Sec. 1.02(6).

WIS JI—CRIMINAL 2904, Comment, n.1. This instruction makes clear that the State carries the burden of proving that the instrument is a security.[10]

*Rule of Lenity*

■

¶ 33. Finally, McGuire contends that the rule of lenity applies because this is a criminal case involving statutory construction and, therefore, all doubts must be resolved in his favor. *See State v. Jackson*, 2004 WI 29, ¶ 12, 270 Wis. 2d 113, 676 N.W.2d 872. He raises this argument for the first time in his reply brief to the State's respondent's brief, although not in response to one of the State's arguments.[11] WISCONSIN STAT. RULE

---

[10] Our conclusion also finds support in other Uniform Securities Act jurisdictions. *See, e.g., State v. Swenson*, 838 P.2d 1136, 1138 (Utah 1992), *State v. Goetz*, 312 N.W.2d 1, 9–10 (N.D. 1981), and *People v. Dempster*, 242 N.W.2d 381, 388 (Mich. 1976), all of which dealt with sales of unregistered securities, which each of the defendants contended were exempt under the statute. In *Dempster*, for example, which was quoted by the *Swenson* and *Goetz* courts, the court held that once the State establishes a prima facie case of statutory violation, the burden of going forward shifts to the defendant, but it remains the burden of the State to establish the contrary beyond a reasonable doubt. *Dempster*, 242 N.W.2d at 388, *Swenson*, 838 P.2d at 1138, and *Goetz*, 312 N.W.2d at 9–10.

[11] When McGuire later was granted leave of this court to reply to DFI's amicus brief, he properly countered with the rule of lenity to DFI's argument that, being a remedial statute, WIS. STAT. § 551.02(13) must be construed broadly.

809.19 contemplates that an appellant will file a reply brief only when the respondent raises matters not addressed in the appellant's initial brief. *Swartwout v. Bilsie,* 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981). While as a general rule we do not consider a tardily raised argument to which the respondent cannot respond, *see Schaeffer v. State Personnel Comm'n,* 150 Wis. 2d 132, 144, 441 N.W.2d 292 (Ct. App. 1989), we elect to address the argument on the merits.

¶ 34. The rule of lenity comes into play only after two conditions are met: the penal statute must be ambiguous, and we must be unable to clarify the intent of the legislature by resort to legislative history. *State v. Setagord,* 211 Wis. 2d 397, 414–15, 565 N.W.2d 506 (1997). Here we deem neither condition present. We see nothing ambiguous about the statutory scheme. WISCONSIN STAT. § 551.02(13)(a) clearly states the general rule that a note is a security, and subsection (13)(b) lists those notes that are exceptions to that general rule. Further, WIS. STAT. §§ 551.22 and 551.23, which set out those securities and transactions that are exempt from regulation, do not exempt such securities and transactions from the criminal liability set out in WIS. STAT. § 551.41.

¶ 35. As to legislative intent, we have observed that the legislative goal of Wisconsin's blue sky laws is to protect investors. *Klatt,* 213 Wis. at 21. The rule of lenity does not require giving a statute the narrowest possible construction if doing so would run contrary to the legislature's intent. *State v. Richard Knutson, Inc.,* 196 Wis. 2d 86, 97, 537 N.W.2d 420 (Ct. App. 1995). In sum, the rule of lenity does not apply here.

## CONCLUSION

¶ 36. Congress intentionally painted with a broad brush to encompass virtually any instrument that might be sold as an investment because it "recognized the virtually limitless scope of human ingenuity, especially in the creation of 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'" *Reves*, 494 U.S. at 60–61 (citation omitted). Their personal relationship does not alter the fact that DeLuisa was motivated by the prospect of a substantial profit, and McGuire by raising money for use in his business enterprise. An examination of the *Reves* factors shows that the context did not require McGuire's note to lose its status as a security within the meaning of Wis. Stat. § 551.02(13)(a). We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

¶ 37. SNYDER, P.J. (*concurring in part; dissenting in part*). The majority opinion relates the sole appellate issue as "whether the promissory note McGuire signed is a 'security' within the meaning of Wis. Stat. § 551.02(13)(a)." Majority, ¶ 8. Because Kevin F. McGuire's conviction for the fraudulent sale of a security is based upon the trial court's finding that the "security" is an "investment contract" rather than a "note,"[1] I cannot join in the majority analysis. The first

---

[1] McGuire presented the appellate issue by stating "the note here is not a 'security' within the meaning of [Wis. Stat.] § 551.02(13)(a)" and the State did not contest this statement of the issue. We are not bound by the issues as framed by the parties, *see State v. Waste Management of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1977), nor should we be if the appellate issue lacks relevance.

713

element of fraudulent sale of a security is proof "that the item [sold] was a security, as defined by Wisconsin law." Wis JI—Criminal 2904. The term "security" is defined in § 551.02(13)(a), and includes both a "note" and an "investment contract" as separate and distinct instruments. The trial court never found that the culprit security instrument was a "note" as defined in § 551.02(13)(a).

¶ 38. At the court trial the State argued that "this transaction created an investment contract" because McGuire had procured money from DeLuisa to use in his show car business. The State's securities law expert testified that this was a "classic case" of an "investment contract." The trial court found that this was "an investment in a business with the expectation of profit" and concluded that the "dealings between the parties resulted in an *investment contract,* which is a security."[2] (Emphasis added.) The appropriate appellate issue, had McGuire raised it, is whether the trial court erroneously concluded that this transaction was an investment contract. Because McGuire never raised or argued this allegation of error, I concur that the judgment of conviction be affirmed.

¶ 39. While I agree with the ultimate disposition of this case, I cannot accept the methodology employed by the majority to arrive at that point. In Wisconsin the question of when a note is a security for purposes of prosecuting a violation of Wis. Stat. § 551.41(2) remains open. While the definition of a security in Wis. Stat.

---

[2] An investment contract is "[a]ny investment in a common enterprise with the expectation of profit to be derived through the essential managerial efforts of someone other than the investor." Wis. Admin. Code § DFI-Sec. 1.02(6)(a) (Dec. 2004); *see also Fore Way Express, Inc. v. Bast,* 178 Wis. 2d 693, 712, 505 N.W.2d 408 (Ct. App. 1993).

§ 551.01(13)(a) includes promissory notes, what is a security under Wisconsin law is often debatable and requires that a court frequently must interpret the law to determine whether a particular instrument is a security. *State v. Mueller*, 201 Wis. 2d 121, 147, 549 N.W.2d 455 (Ct. App. 1996).

¶ 40. The majority opinion spends considerable time and effort pointing out that the trial court addressed the "family resemblance test" factors set forth in *Reves v. Ernst and Young*, 494 U.S. 56 (1990). *Reves* provides a detailed analysis of the family resemblance test factors to determine whether a note is a security in a federal civil law context.[3] *See State v. Johnson*, 2002 WI App 224, ¶ 12, 257 Wis. 2d 736, 652 N.W.2d 642. *Reves* establishes a rebuttable presumption that every note is a security in a federal civil action. *Reves*, 494 U.S. at 65, 67. However, the *Reves* test has never been reported in Wisconsin in the context of a criminal prosecution for fraud involving a "note."

¶ 41. In *Johnson*, the court acknowledged that *Reves* presented a test framework to determine whether a note is a security, and that the framework was "instructive" in determining whether the instrument at issue was a WIS. STAT. ch. 551 security. *Johnson*, 257 Wis 2d 736, ¶ 12. However, *Johnson* did not involve a note. *Id*. at ¶ 11, n.6. *Johnson* accommodated the *Reves* family resemblance test to debt instruments such as "debentures" and "promises to repay loans made at above market rates" as applied "to the facts in this case." *Id*. at ¶ 15. In *Mueller* the court expressly stated that the case had not been tried on the basis of the *Reves* test

---

[3] The petitioners in *Reves v. Ernst and Young*, 494 U.S. 56 (1990), were awarded a $6.1 million civil judgment.

factors. *Mueller*, 201 Wis. 2d at 146–47. Neither *Mueller* nor *Johnson* are instructive.

¶ 42. Again, *Reves* establishes a rebuttable presumption that every note is a security in a federal civil action. In Wisconsin, presumptions in criminal cases are controlled by Wis. Stat. § 903.03 and statutory presumptions have only the effect of a permissible inference. *See State v. Clark*, 87 Wis. 2d 804, 814, 275 N.W.2d 715 (1979). In a criminal trial involving a recognized presumption a jury would have to be instructed that: (1) the law presumes the fact alleged; (2) the presumption is rebuttable; (3) the rebuttal may be "circumstantial" (direct or circumstantial evidence); and (4) the presumed fact and the basic facts must be proved by the criminal quantum of proof. Judicial Council Committee's Note, 1974, Wis. Stat. Ann. § 903.03 (West 2000). Where a note is alleged to be the security culprit in a Wis. Stat. ch. 551 securities fraud conviction, the issue of the application of the *Reves* civil presumption should be addressed in a criminal law context, and it was not so addressed here because the security is an investment contract.

¶ 43. Because the McGuire security is an investment contract rather than a note, the *Reves* test and its attending rebuttable presumption are not relevant. The trial court decision that the security was an investment contract precludes our review of whether the promissory note was also a covered security, regardless of McGuire's decision to raise and argue the issue. *See Jenkins v. Sabourin*, 104 Wis. 2d 309, 313–14, 311 N.W.2d 600 (1981). In effect, by addressing the academic issue of whether the McGuire promissory note is a covered security, we usurp the discretion and judgment of the trial court, and the function of the trial court in general, contrary to our supreme court's ex-

press caution that we refrain from doing so. *See Barrera v. State*, 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980).

¶ 44. In sum, because the majority opinion addresses an issue unrelated to McGuire's conviction, and because the opinion ventures into an area of law that has not previously been considered and decided in Wisconsin in a criminal prosecution, I cannot concur with the majority analysis and conclusion that the McGuire "note" is a WIS. STAT. ch. 551 "security." However, because McGuire does not challenge his conviction on the basis that the ch. 551 security interest violated was an investment contract, I would summarily dismiss his appeal and affirm the judgment of conviction.