2010 UT App 245

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jennifer Robyn BURKINSHAW, Defendant and Appellant.**

**No. 20090055–CA.**

Court of Appeals of Utah.

Sept. 10, 2010.

Scott C. Williams, Salt Lake City, for Appellant.

Mark L. Shurtleff and Marian Decker, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and ROTH.

OPINION

THORNE, Judge:

¶ 1 Defendant Jennifer Robyn Burkinshaw appeals from her conviction for securities

fraud, *see* Utah Code Ann. § 61–1–1 (2006). Defendant argues that the evidence at trial was insufficient to support her conviction. We affirm.

## BACKGROUND [1]

¶ 2 In early 2004, Defendant was attempting to open a bar in Salt Lake County. She had a financial partner who was expected to provide the necessary capital for the business but failed to timely keep his commitments. As a result, the business was frequently in need of financial assistance.

¶ 3 In April 2004, Tyler Filby was looking for work as a disc jockey and approached Defendant in his search for employment. Defendant hired Filby to assist in the opening of the bar and ultimately continue employment as a disc jockey. Filby knew of the business's financial difficulties and offered to give Defendant a personal, short-term loan of $10,000 for thirty days at 30% interest. Defendant accepted Filby's offer, Filby memorialized the debt in writing, and Defendant signed the document. Defendant never repaid the loan.

¶ 4 Rosemary Stafford, a patron of Dimitri's, the bar previous to Defendant's at the same address, spoke with Defendant about the new bar. At some point in the discussion, the subject turned to the bar's finances. On July 7, 2004, Stafford personally loaned $30,000 to Defendant for thirty days at 30% interest. The loan agreement was formalized by a promissory note Stafford and Defendant executed. Defendant was not able to repay the loan, and Stafford filed a civil suit and obtained a default judgment on November 4, 2004.

¶ 5 Danny Hall, a business owner in Salt Lake City, learned about a potential business opportunity with Defendant from his landlord, who operated an adjacent shop. In mid–July 2004, Hall met with Defendant in front of Hall's shop. Defendant told Hall that she was trying to open a bar and needed funding. A few days later, Hall visited the location of Defendant's bar. Defendant showed Hall around the club and Hall observed that the bar needed a lot of repairs. Shortly after, Hall called Defendant and informed her that he was interested in giving her a short term loan for her business. Hall loaned Defendant $20,000 in two installments of $10,000 to be repaid in two months at 15% interest. The first portion of the loan was formalized by a note Defendant signed on July 19, 2004. The second was formalized by a note Defendant signed on July 23, 2004. In the second note Defendant "agree[d] to personally guarantee this sum along with the note I signed on the nineteenth of July." Defendant defaulted on the $20,000 loan. Hall filed suit and obtained a default judgment.

¶ 6 In July 2004, Gail Sweeny met Defendant. Sweeny's son worked for Defendant, and Sweeny knew that Defendant needed money to make repairs to the club and for various other things. In late September 2004, Sweeny decided to loan Defendant $50,000 to be repaid with minimal monthly payments for a twenty-four month period at 10% interest. The debt was collateralized by real property and memorialized in writing. Defendant was not able to repay the loan.

¶ 7 On July 17, 2006, the State charged Defendant by criminal information with six counts of securities fraud. An amended information was later filed reducing the counts to five: count I regarded the Filby loan; count II the Stafford loan; counts III and IV the Hall loans; and count V the Sweeny loan. A two-day bench trial was held. After closing arguments, the trial court consolidated counts III and IV involving Hall. The trial court found Defendant guilty of one count of securities fraud regarding Hall and acquitted Defendant of the remaining charges.

¶ 8 At sentencing, the trial court imposed the statutory indeterminate prison term of one-to-fifteen years, suspended the prison term, and placed Defendant on a three-year term of probation. Defendant timely filed a notice of appeal.

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *State v. Nichols*, 2003 UT App 287, ¶ 1 n. 1, 76 P.3d 1173 (internal quotation marks omitted).

ISSUE AND STANDARDS OF REVIEW

¶ 9 Defendant argues that the evidence at trial was insufficient to sustain a guilty verdict on the single count of securities fraud. Although Defendant frames the issue as insufficiency of the evidence, Defendant essentially argues that the trial court erred in determining that the promissory notes executed by the parties were a security within the definition contained in Utah Code section 61–1–13, *see* Utah Code Ann. § 61–1–13 (Supp.2010), and the meaning of the term "security" as interpreted in *Reves v. Ernst & Young,* 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990).

■ ¶ 10 "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Nichols,* 2003 UT App 287, ¶ 24, 76 P.3d 1173 (internal quotation marks omitted). To the extent that Defendant's arguments implicate the trial court's application and interpretation of *Reves,* we review the trial court's interpretation of case law as presenting a question of law that we review for correctness. *See State v. Richardson,* 843 P.2d 517, 518 (Utah Ct.App. 1992).

2. The State urges this court to decline to review Defendant's sufficiency of the evidence supporting her securities fraud conviction challenge because Defendant failed to marshal the evidence. Although Defendant does at times stray from her marshaling requirement and refer to evidence that does not support the findings, we believe that Defendant has marshaled the evidence sufficiently to pose the question of whether the key findings are supported by the evidence. *See generally Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter–Day Saints,* 2007 UT 42, ¶ 20, 164 P.3d 384 ("The reviewing court, … retains discretion to consider independently the whole record and determine if the decision below has adequate factual support.").

3. The application of the federal test created in *Reves v. Ernst & Young,* 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990), to the Utah Securities Act presents us with a case of first impression. The parties acknowledge that there is no Utah case law specifically applying the *Reves* test but assert that Utah courts have adopted the test to determine whether a note is a security. We

ANALYSIS

¶ 11 Defendant challenges the sufficiency of the evidence supporting her securities fraud conviction. Defendant argues that the evidence at trial was insufficient to show that the loan transaction memorialized by two promissory notes entered into between Defendant and Hall was a security.[2] Defendant acknowledges that the Utah Uniform Securities Act (the Utah Securities Act) presumes that notes are securities, *see* Utah Code Ann. § 61–1–13(1)(ee)(i)(A) (Supp. 2010), but argues that this presumption is rebutted according to the family resemblance test of *Reves v. Ernst & Young,* 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990).[3]

■ ¶ 12 The family resemblance test begins with the presumption that every note is a security. *See id.* at 67, 110 S.Ct. 945. This presumption may be rebutted if the note bears a strong resemblance to one of the following: (1) a note delivered in consumer financing, (2) a note secured by a home mortgage, (3) a short-term note secured by a lien on a small business or its assets, (4) a note evidencing a character loan to a bank customer, (5) a short-term note secured by an assignment of accounts receivable, (6) a note that formalizes an open-account debt incurred in the ordinary course of business,

note that there is Utah case law applying the federal test created in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), to determine whether an instrument is an investment contract, which test the Eighth and District of Columbia Circuits have applied to notes. *See Reves,* 494 U.S. at 64, 110 S.Ct. 945 (rejecting "the approaches of those courts that have applied the *Howey* test to notes," and determining that courts are to apply the version of the family resemblance test articulated in *Reves, see* 494 U.S. at 67, 110 S.Ct. 945). However, there is no Utah case applying either the *Howey* test or the *Reves* test to notes.

The parties do not present argument on whether the *Reves* test should be applied to the Utah Securities Act. As a result, we do not consider the statutory interpretation or legislative purpose of the Utah Securities Act, nor do we consider any constitutional or notice issues that may arise from application of the *Reves* test. Instead, we simply review whether the trial court correctly applied the *Reves* family resemblance test without deciding whether Utah should adopt that test.

or (7) a note evidencing loans by commercial banks for current operations. *See id.* at 65, 110 S.Ct. 945; *see also State v. Pedersen,* 122 Wash.App. 759, 95 P.3d 385, 388 (2004). To determine whether a note bears a strong resemblance to one of these instruments, courts consider four factors: "(1) the motivations that would prompt reasonable parties to enter into the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the instrument's risk." *Pedersen,* 95 P.3d at 389 (citing *Reves,* 494 U.S. at 66–67, 110 S.Ct. 945). "If an instrument is not sufficiently similar to an item on the list, the decision whether another category should be added is to be made by examining the same factors." *Reves,* 494 U.S. at 67, 110 S.Ct. 945.

## I. Trial Court's Application of the *Reves* Family Resemblance Test

¶ 13 In applying the *Reves* test to the promissory notes at issue in this case, the trial court considered the four factors of the family resemblance test and determined that Hall was an investor and the notes were securities. The trial court found that "Defendant's purpose in obtaining the funds solicited was for general business use; however, the witnesses' motivation for loaning [D]efendant money varied." The trial court also found that the interests of three of the witnesses were not solely for the profit the note was intended to generate but for other reasons such as obtaining employment as in Filby's and Sweeny's case or assisting Defendant in opening the club as in Stafford's case. In contrast, the trial court found that Hall gave Defendant money under dissimilar circumstances that demonstrated Hall's purpose for loaning the money was primarily as an investment. The trial court noted that

a. Hall's landlord told him about an opportunity to invest in [D]efendant's business enterprise.

b. Hall appraised the opportunity in connection with expecting a return on his investment.

c. Hall was not loaning the money for payroll or equipment but, instead, for a general business purpose.

d. Hall had no control over the use of the funds.

e. There was no regulatory scheme or other risk-reducing factor to protect Hall's investment.

f. Hall's investment sounds like a security and would appear so to the investing public.

¶ 14 Applying the second and third factors, the trial court determined that the "factor about plan distribution did not apply in this case" and the "factor about expectations of the investing public was also of minor significance in this case." Applying the fourth factor, the trial court determined that "[t]here were no risk-reducing factors for the notes issued in this case; there was no regulatory scheme or mortgage, etc. which reduced the risk of the loss of the monies given to [D]efendant."

## II. Appellate Review of the Trial Court's Application and Interpretation of the *Reves* Family Resemblance Test

¶ 15 The next step involves reviewing the trial court's application of the facts to the law regarding Defendant's sufficiency of the evidence claim and, to the extent necessary, the court's interpretation of the *Reves* family resemblance test to the promissory notes entered into between Hall and Defendant. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Nichols,* 2003 UT App 287, ¶ 24, 76 P.3d 1173 (internal quotation marks omitted). The trial court's interpretation of case law presents a question of law, and we review the trial court's interpretation of that case law for correctness. *See State v. Richardson,* 843 P.2d 517, 518 (Utah Ct.App. 1992). In applying *Reves,* we first presume that the promissory notes are securities. Next we consider the four factors to determine whether the promissory notes strongly

resemble one of the commercial notes listed in *Reves* as nonsecurities.

■ ¶ 16 The first *Reves* factor is the motivation of a reasonable seller and buyer. "If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.' " *Reves v. Ernst & Young,* 494 U.S. 56, 66, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). If, however, "the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose, ... the note is less sensibly described as a 'security.' " *Id.*

¶ 17 The evidence here supports the trial court's findings about the parties' motivations. Hall met with Defendant after learning about a potential business opportunity with Defendant from the parties' mutual acquaintance. In seeking the loan, Defendant solicited the funds for the general use of a business enterprise and told Hall that she "was trying to open a bar and that she needed funding." Defendant did not identify how she would spend the money, nor did she indicate that it would be used to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, etc. In loaning the $20,000, Hall testified that he was expecting a profit from the 15% interest. Although Hall wanted to be informed regarding how the money was spent, Hall never sought nor had control over the use of the funds. Based on this evidence, we conclude that the trial court's determination that this factor weighs against a family resemblance to a nonsecurity is supported by evidence and should not be disturbed.

¶ 18 The second factor examines whether the instrument was one for which there is "common trading for speculation or investment." *Reves,* 494 U.S. at 66, 110 S.Ct. 945 (internal quotation marks omitted). In this case, there is no evidence that the promissory notes were to be commonly traded, and the loan appears to be a private agreement between two parties. The State argued below that Defendant's plan of distribution was to offer a note to anyone who was willing to invest money with Defendant. The State further argued that although "[t]here was no indication of a secondary market," it emphasized that "the investment was open to anyone in the public who was willing to invest." The State, however, ultimately acknowledged the weakness of this factor by stating that "this factor may tilt toward a family resemblance to a non-security." We agree, and conclude that this factor weighs in favor of a nonsecurity determination.[4]

¶ 19 The third factor considers the reasonable expectations of the investing public. *See Reves,* 494 U.S. at 66, 110 S.Ct. 945. The trial court considered this factor and determined that it was of "minor significance in this case," but ultimately ruled that "Hall's investment sounds like a security and would appear so to the investing public." Under the circumstances of this case, it is reasonable for an individual loaning money to consider the transaction done for a profit from the 15% interest to be an investment. *See id.* ("A reasonable investor would have considered the transaction with its higher-than-commercial interest rate to be an investment."). We conclude that the trial court properly found that this factor weighs against a resemblance to the family of nonsecurities.

■ ¶ 20 The final factor examines "[w]hether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Reves,* 494 U.S. at 67, 110 S.Ct. 945. Defendant acknowledges that no other formal regulatory scheme applies to the transaction and that the loan was not collateralized. Defendant asserts, however, that this would be true of any such short-term loan and that the short-term nature of

---

**4.** The trial court found that "[t]he factor about plan distribution did not apply in this case." As such, it appears that the trial court essentially found that there was not a plan of distribution in place and that this factor was ultimately considered to weigh in favor of a nonsecurity determination.

the loan together with available remedies at common law are other factors that would reduce the risk of the transaction to some degree. As evidence of this assertion, Defendant points out that Hall quickly obtained a judgment for the amount of the loan and could have availed himself of it by execution of the judgment at any time. We disagree. The ability to collect damages from a civil lawsuit does not necessarily reduce the risk of an instrument, nor does it "render the application of securities statutes unnecessary." *See State v. Pedersen,* 122 Wash.App. 759, 95 P.3d 385, 390 (2004) (stating that the ability to collect damages in a lawsuit is "speculative, [and] it also does not render the application of securities statutes unnecessary. If it did, there would be little need for securities acts"). Here, even if Hall had executed upon the judgment, it does not necessarily follow that he would have recovered any of the money loaned to Defendant—especially given Defendant's financial history of other loan defaults. As such, we do not agree that the ability to obtain a judgment reduces the risk of the transaction to any measurable degree. Because Defendant does not point out any factor that would reduce the risk of the transaction and render application of the Utah Securities Act unnecessary, we conclude that the trial court properly found that this factor weighs against a family resemblance to nonsecurities.

¶ 21 In summary, the first, third, and fourth factors weigh against any family resemblance to nonsecurities; only the second factor weighs in favor. "The factors are considered as a whole, and failure to satisfy one of the factors is not dispositive." *State v. McGuire,* 2007 WI App 139, ¶ 23, 735, 302 Wis.2d 688, 735 N.W.2d 555. In this case, the factors considered together support the presumption that the promissory notes at issue are securities. Accordingly, we conclude that the evidence is sufficient to support the trial court's conclusion that the notes were a security and its decision to convict Defendant of securities fraud.

## CONCLUSION

¶ 22 In applying the *Reves* family resemblance test, pursuant to statute, it is presumed that the promissory notes are securities. This presumption may be rebutted if the note bears a strong resemblance to a nonsecurity. The trial court applied the *Reves* test, considered the factors as a whole, and found that Hall's promissory notes were securities because the first, third, and fourth factors weigh against any family resemblance to nonsecurities. The evidence presented at trial supports the trial court's determination that Defendant's purpose in obtaining the funds solicited was for general business use; Hall gave Defendant money as an investment; there was no regulatory scheme or other risk-reducing factor to protect Hall's investment, and Hall's investment would appear as a security to the investing public. Based on the foregoing, we conclude that the factors considered together establish that the promissory notes at issue are securities. Accordingly, we uphold Defendant's conviction of securities fraud.

¶ 23 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and STEPHEN L. ROTH, Judge.